Alois C. Mazur, J.
Defendant was charged with violating section 245.02 of the Penal Law, which reads in pertinent parts as follows: “ A person is guilty of promoting the exposure of a female when he knowingly conducts, maintains, owns, manages, operates or furnishes any public premises or place where a female appears clothed or costumed in such a manner that a portion of her breast below the top of the areola is not covered with a fully opaque covering. This subdivision shall not apply where such female is entertaining or performing in a play, exhibition, show or entertainment.”
By information sworn to on February 17, 1972 the complaining witness, an undercover police officer, alleged the following facts herein excerpted and condensed by the court: ‘ ‘ Richard M. Wilhelm * * * did knowingly promote the exposure of a female in a public place * * * for a fee of $20.00 (by selling) the services of a female for the purpose of taking pictures of said female in the nude. Said female * * * after being ordered by Mr. Wilhelm (did) remove her clothes and did allow deponent to take pictures of her while she was fully unclothed. Said female was not entertaining or performing in a play, exhibition, show or entertainment.”
*524 Defendant maintains that the statute in question is unconstitutional per se or as applied and also, or in the alternative, that the information does not allege a crime and/or is otherwise insufficient.
Before this court proceeds to attempt to resolve the issues involved, it should be pointed out that this prosecution does not involve any claims of obscenity, public lewdness, offensive exhibition or coercion to submit to the alleged photographing. Purely and simply this prosecution involves the attempted photographing of a nude female who apparently consented to the arrangement and was a willing “ model ”.
Moreover, this case quite apparently involves the attempted photographing of a willing model under circumstances at least suggesting a studio-type setting. (Albeit perhaps not attaining the standards of studio facilities available to advanced professionals.) No claim is made that the posing or photographing itself was intended to be an exhibition or showing (this actually is expressedly excluded by a factual allegation in the information) nor is there any claim that this occurred in public or under circumstances where the general public was invited to view the photographing. (Interestingly enough, if there was a public exhibition, even before minors, of the techniques of photographing and posing females, nude or partially nude, then the statutory exclusion could conceivably make it lawful!)
The prosecution must fail for at least two reasons. First of all, this court is required to construe the statute according to the fair import of its terms and the court, in construing a criminal statute, may not ‘ ‘ read in ” a proscription where a reading of the terms does not create one.
Here a reading of the statute leads one to conclude that the Legislature, in its presumed wisdom, has decided to proscribe the act of making available any public premises or place where a female appears ‘ ‘ clothed or costumed in such a manner ’ ’ that a certain portion of her anatomy 1 ‘ is not covered with a fully opaque covering ”. Yielding apparently to the persuasive arguments of “ go-go girl ” establishments and other show business or theater interests, the Legislature deemed it appropriate to exclude such enterprises from the general proscription. The Legislature did not, however, feel similarly disposed toward other individuals, groups, institutions or interests which might have occasion to maintain premises wherein a female appears so clothed or costumed as to leave a designated portion of her anatomy uncovered by an opaque covering.
*525 Whatever the legislative intent for the proscription, it is apparent that one of the elements of the offense is the appearance of a female “ clothed or costumed ” in a certain manner. Interestingly the Legislature did not feel compelled to address itself to females “ clothed or costumed ” in such a manner as to leave uncovered their elbows, knees, pubic hair or genitalia. Nay, the Legislature did not even choose to address itself in this section to the problem or question of the completely nude or fully unclothed female — and this, after all, is exactly the alleged gravamen in the information. What we have here is simply a legislative concern that no one must furnish or maintain public premises or places where a female is so clothed or costumed that she appears with the areola portion of her breasts uncovered by a fully opaque covering.
No doubt the cause of these probable legislative omissions was due to simple oversight rather than any mammillary gland fixation. But the Legislature has spoken and it has not said that the facts alleged in the information herein are proscribed.
Barring, therefore, a clear legislative proscription of the conduct alleged in the information, this court, of course, cannot enact one. It is for this reason that this court concludes that the information herein does not allege the crime or offense cited.
However, this court is aware of the fact that it is possible for some men (and even higher courts) to construe this statute differently. (It has occurred to the court that even a “ strict constructionist ” — whatever that is — may construe this statute more loosely, liberally or freely!) Therefore, it is felt appropriate to express the reasons why the prosecution herein must also fail for reasons beyond that of mere interpretation of statutory meaning.
Whatever the exact legislative intent behind this particular statute and whatever the meaning and purpose of this statute, it appears to the court that, at the very least, it is being invoked and applied in a maimer violative of the due process and equal protection clauses of the United States Constitution and the New York State Constitution (see U. S. Const. 14th Arndt., § 1; N. Y. Const, art. I, §§ 6,11) and in a manner which exceeds the police power of the State.
In effect, what we have here is the police so construing and applying the statute as to apply to any person who knowingly makes available to interested individuals of the general public premises or a place where a female appears in a certain way. In this sense, judging from the application of this statute, all such premised or places made available to interested individuals of *526 the general public become ‘ ‘ public ’ ’ within the meaning of the section. This, notwithstanding the fact that the other element of the offense, to wit,, the appearance of the female in a certain manner, may occur in relative privacy and during which occurrence the general public may not be invited. Such construction and application would obviously apply to any owner of a photographic studio who wishes to lease his facilities knowing that a female would pose therein in the nude or partially in the nude.
The renting of equipped studios and the selling of studio time for such purposes is a common practice in New York State and elsewhere. Certainly a consistent and continued application of the type involved herein would substantially interfere with the business and property of many individuals engaged in presumptively legitimate enterprises.
There would seem to be little doubt that the photographing of nudes (much of which no doubt is done in leased or rented studios) occupies the time and talents of many people. Pictures of nudes probably appear in every issue of such popular publications as Modern Photography, Popular Photography and Playboy. Advertisements carried in The New TorJc Times, Buffalo Evening News and Courier Express frequently show pictures of partially clad females whose “offending” parts are not pictured but who obviously appeared nude in the studio.
The combined circulation of the cited publications must surely total to many million each month. This fact and the stature of the publications certainly suggest how extensive must be the business or enterprise of photographing nudes and also how acceptable it has become by the general public.
A consistent and continued construction and application of the statute in the manner involved herein would also substantially affect and interfere with other legitimate enterprises, pursuits or occupations. We need only to consider the risks to persons operating or conducting classes in sculpturing, painting or medicine to begin to appreciate the immensity of the potential effect. (These are not overreaching illustrations because, after all, appearances or presentations before persons or institutions having scientific, educational or governmental purposes would constitute a defense only in obscenity cases. Of. Penal Law, § 235.15. This case simply does not involve any violation of the obscenity statutes.)
In enumerating examples of businesses which would be affected by a consistent application of the type involved herein, other questions have occurred to this court. In this day of *527 the loosely knit, sheer, and “see-through” women’s dresses, gowns and bras, what would he the obligation of the people in charge of restaurants, theaters, opera houses and beaches to see to it that each female patron had a “ fully opaque ” covering over the offending portion of her anatomy? Could not such people he prosecuted if they knew that females not fully opaqued in certain areas appeared in their establishments or places?
(Many other businesses, occupations or activities could he listed as being interfered with by this type of legislation if we considered the provisions of section 245.01 of the Penal Law, which is essentially similar in verbiage, probable intent and possible application as section 245.02 of the Penal Law. This section, however, applies to the female who appears so clothed or costumed, rather than to the person who furnishes the place where such female appears.)
It is well settled law in this State that the government may not interfere arbitrarily with private business or to impose unnecessary or unreasonable restrictions on such business under the guise of promoting the general welfare. (Fisher Co. v. Woods, 187 N. Y. 90; Trio Distr. Corp. v. City of Albany, 2 A D 2d 326, revd. on other grounds 2 N Y 2d 690; Wright v. Hart, 182 N. Y. 330; Cowan v. City of Buffalo, 247 App. Div. 591; Carey v. Instantwhip Schenectady, Inc., 10 Misc 2d 113; People v. Perretta, 228 App. Div. 420, revd. on other grounds 253 N. Y. 305.)
"While the cases cited above do generally involve statutes or ordinances obviously directed against specific industries, the principle cited cannot be altered because this broad statute (and perhaps overly broad), seemingly applying to everyone, is being applied to a particular enterprise. The effect can he just as unnecessarily and unreasonably restrictive of legitimate business or occupations.
That this statute as applied is arbitrary and unreasonable can be seen by reference to the logical consequences that would follow by consistent and continued enforcement. Some of the potential consequences of such application have been mentioned above and, in the opinion of this court, prove without additional argument that the interference is arbitrary and unreasonable.
To conclude and summarize as to this point, however, the effect of this statute as applied by the local authorities is to oppress a certain class or genre of citizen entrepreneurs or individuals (e.g. owners, operators, managers, custodians of *528 photo studios, art studios, art schools and possibly even restaurants, theaters, hotel ballrooms, opera houses, to name a few) ¿tod unreasonably interfere with their presumptively legitimate activities.
Finally, the statute as applied is so discriminatory as to make it violative of the equal protection clauses of the Federal and State Constitutions. This is so because the exclusionary clause in the statute protects certain classes of people engaged in certain types of activity while discriminating against many other classes and activities equally entitled not to be deprived of liberty or property. Although it is true that the protection afforded under the equal protection clauses of the respective constitutions is not absolute, it" does and should protect the citizen from legislative and executive action so palpably arbitrary or unduly discriminatory as the exclusionary portion of this statute, together with this type of application of the statute, make it.
It is true after all, that a provision possibly unobjectionable on its face may be adjudged unconstitutional because of its effect and operation. It is for this reason that while this court has not ruled the statute itself is unconstitutional, it is adjudged to be unconstitutional because of the effect and operation resulting from its application in the present case.
The charge is, therefore, dismissed and the defendant discharged.