OPINION OF THE COURT
Sam Eisenberg, J.
The defendant is charged with obscenity in the second degree, in violation of subdivision 1 of section 235.05 of the Penal Law, promoting prostitution in violation of section 230.40 of the Penal Law, and promoting the exposure of a female in violation of section 245.02 of the Penal Law.
*742 The defendant has challenged the constitutionality of each of the sections of the Penal Law under which he is charged. Additionally, he has moved to suppress the use in evidence of certain films and a video recorder, seized from him without a warrant and without prior judicial scrutiny.
These motions are disposed of as follows:
1. The constitutionality of sections 235.05

and 235.00 of the Penal Law.

The defendant challenges the constitutionality of section 235.05'of the Penal Law as being excessively restrictive of the right of free expression. It is the contention of the defendant that New York’s obscenity statute has exceeded the bounds established by the United States Supreme Court in Miller v California (413 US 15) by the inclusion of the acts of sadism and masochism in its definition of that which may be regarded as being obscene.
In 1973, in the landmark case of Miller v California (supra), the Supreme Court of the United States formulated its current standards against which particular material or acts are to be tested to determine whether they are obscene. This is the three-tier test adopted by Miller (supra):
(a) whether the average person applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;
(b) whether the work depicts or describes in a patently offensive way, sexual conduct specifically defined by applicable State law; and
(c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.
By way of examples of offensive conduct under part (b) of the standards, the court included (1) patently offensive representations or descriptions of ultimate sexual acts normal or perverted, actual or simulated; and (2) patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals.
In an apparent effort to conform its definition of obscenity to the standards of Miller (supra), the New York State Legislature amended section 235.00 of the Penal Law so as to fix the following as such definition:
*743 “§ 235.00 Obscenity; definition of terms
“The following definitions are applicable to sections 235.05, 235.10 and 235.15:
“1. ‘Obscene’. Any material or performance is ‘obscene’ if (a) the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex and (b) it depicts or describes in a patently offensive manner, actual or simulated: sexual intercourse, sodomy, sexual bestiality, masturbation, sadism, masochism, excretion or lewd exhibition of the genitals, and (c) considered as a whole, it lacks serious literary, artistic, political and scientific value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience.”
The thrust of the defendant’s objection is the contention that Miller’s standards relate to sexual material and conduct only and that the modified New York statute is rendered overbroad by its inclusion of sadism and masochism as obscene acts.
But, the defendant herein is not charged with having committed nor having promoted any acts of sadism or masochism. And by the ordinary rules of constitutional construction and determination a person may not be heard to challenge a statute which is constitutionally valid as to him, on the ground that this same statute may be unconstitutional when applied to another set of circumstances and another defendant, not then before the court. (Broadrick v Oklahoma, 413 US 601.) That principle flows from the view that the courts are not constituted to deal with moot matters but rather with real situations. “A closely related principle is that constitutional rights are personal and may not be asserted vicariously” (Broadrick v Oklahoma, supra, p 610). Some exceptions to that basic rule have been recognized. Thus, a defendant may attack the constitutionality of a statute as being overbroad where the outcome of the case may seriously affect the rights of persons not before the court and who may have no effective avenue for the preservation of their rights. Such claims of overbreadth *744 have been entertained “where statutes, by their terms, purport to regulate the time, place, and manner of expressive or communicative conduct * * * and where such conduct has required official approval under laws that delegated standardless discretionary power to local functionaries, resulting in virtually unre viewable prior restraints on First Amendment rights.” (Broadrick v Oklahoma, supra, p 613.) The doctrine of overbreadth is a limited one and must be sparingly used. It should not be invoked, particularly with respect to statutes which seek to control conduct rather than speech, except where the overbreadth is real and substantial and truly threatens the rights of persons not then before the court. This court perceives no such danger by the inclusion of depiction or description of sadism or masochism in a patently offensive manner within the definition of obscenity. A person who may be charged with the presentation, promotion or possession of obscene material dealing with sadism or masochism, will in no sense be affected by a finding in this court that the statute being attacked, insofar as it is applied to defendant’s alleged conduct, is constitutional. A finding by this court that the presentation of movies depicting obscene sexual acts falls within Miller’s standards would in no sense bar a defendant, who is charged in another case with depicting obscene acts of sadism and masochism, from urging that Miller (supra) did not contemplate such conduct and that section 235.00 of the Penal Law should therefore be declared unconstitutional as it may apply to such acts of sadism and masochism. In any event if such contention were sustained in another case, not now before the court, it would probably permit the excision of the words found to be offensive and would allow the remainder of the statute to stand. That process is in accord with a fundamental rule of statutory construction which permits the invalidation of a part of a statute and the upholding of the remainder where the parts are separable and the upholding of the sustained portion is not clearly inconsistent with the rejection of the severed portion. That process of constitutional adjudication is encouraged by subdivision d of section 150 of McKinney’s Statutes (McKinney’s Cons Laws of NY, Book 1) which provides: “A statute may be unconstitutional in one part and valid in another part, and the unconstitutionality *745 of one part does not necessarily invalidate the entire statute. The courts will attempt to save part of a statute, and if valid and invalid provisions are incorporated in the same act the former, if separable, will be upheld though the latter must fall. The invalid part may be severed from the remainder if, after the severance, the remaining portions are sufficient to effect the legislative purpose deducible from the entire act”.
The defendant’s challenge to the constitutionality of subdivision 1 of section 235.05 of the Penal Law is, therefore, rejected.
The defendant argues further that section 235.00 of the Penal Law which defines obscenity and section 235.05 which employs the definition in stating the offense with which the defendant is charged are constitutionally invalid for vagueness. The alleged vagueness, the defendant contends further, fails to give the defendant adequate notice of the proscribed conduct. In particular, the defendant asserts that the phrases “contemporary community standards” and “patently offensive manner”, are insufficient to advise a person of the conduct which is acceptable. These phrases were explicitly derived from the standards and guidelines established by the Supreme Court of the United States in Miller v California (supra) to delineate that which constitutes obscenity. To ask this court to now declare New York obscenity laws unconstitutional by reason of the use of such phrases is tantamount to moving this court to overrule our highest court. We are not prepared to be so presumptuous. Additionally, the argument of the defendant removes the phrase “contemporary community standards” from its context and overlooks the comments of the court in Miller relative to that which is “patently offensive”. The contemporary community standards are to be applied by the ubiquitous “average person” — the ever present “reasonable man or woman”. In so many situations the court is willing to accept that which the reasonable person perceives and vagueness is removed when the standards of conduct are those fixed by the law’s reasonable person. Miller (supra) informs us that the standards which it has constructed and which are embodied in New York’s obscenity law are directed against hard-core pornography and the *746 conduct which is “patently offensive” is in fact hard-core pornography. It is conduct whose appeal is predominantly prurient and exceeds the customary limits of descriptive candor.
In disposing of the defendant’s argument that New York’s obscenity laws are void for vagueness, it is useful to recall the comments of the court in Roth v United States (354 US 476, 491) relative to the void-for-vagueness doctrine as applied to obscenity: “Many decisions have recognized that these terms of obscenity statutes are not precise * * * lack of precision is not itself offensive to the requirements of due process ‘...[T]he Constitution does not require impossible standards’; all that is required is that the language ‘conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices’”. These comments were relied upon by New York’s Court of Appeals in People v Heller (33 NY2d 314) in upholding the constitutionality of the State’s obscenity statute.
The New York Penal Law is more than adequate to advise as to the conduct proscribed by sections 235.05 and 235.00 and the defendant’s motion to void these sections is denied.
2. The constitutionality of section 245.02 of the Penal Law.
The defendant has attacked section 245.02 of the Penal Law, under which the defendant has been charged with promoting the exposure of a female, and the charge itself on a number of grounds.
The same claim of overbreadth has been leveled against section 245.02 of the Penal Law as was asserted by the defendant with respect to sections 235.05 and 235.00 of the Penal Law. In the concerns expressed by the defendant about the effects of section 245.02 upon legitimate activities, there is lacking that evidence of real and substantial overbreadth which is necessary to invalidate a statute which controls conduct. The protection of persons engaged in the photographing of nude women, the performance by women in plays which calls for the exposure of their breasts in furtherance of artistic pursuits and endeavors are not threatened by section 245.02 of the Penal Law or by the prosecution of this charge against the defendant.
*747 The fact that section 245.02 of the Penal Law relates solely to the improper exposure of females does not thereby render the statute as violative of the equal protection clause of our Constitution. To constitute a denial of equal protection there must be an arbitrary systematic course of discrimination, purposely designed to favor one person or class over another, with no rational basis for the distinctions. Legislative distinctions will be upheld if they can reasonably be sustained (United States v Carolene Prods. Co., 304 US 144). Without regard to motive or intent legislative distinctions are proper so long as they are based upon reason. (Farrington v Pinckney, 1 NY2d 74.) Section 245.02 of the Penal Law is grounded in the current standards of the community which deem it offensive to permit the excessive exposure of the female body except in furtherance of an artistic presentation. This court is not prepared to substitute its opinion for the legislative determination that such conduct is offensive to the sensibilities of the community and is, therefore, improper.
To substantiate the charge that the defendant promoted the exposure of a female, the complaint herein alleges that the defendant permitted various females to walk about his bar while they were completely naked. The defendant contends, however, that section 245.02, by its language only prohibits furnishing or maintaining public premises where a female is so clothed or costumed that she appears with the areola portion of her breasts without a fully opaque covering, and that it does not prohibit complete female nudity. That argument asks the court to reach an absurd conclusion and it will not do so. It is incredulous to believe that the Legislature intended to permit complete nudity (outside of an artistic performance) and to bar only the exposure of the areola portion of the breast. The claim made herein by the defendant was similarly substantially rejected in People v Gilbert (72 Misc 2d 795).
3. The constitutionality of section 230.40 of the Penal Law.
In our concept of law there is no vagueness in a standard of reasonableness. Section 230.40 of the Penal Law is not vague because it makes, criminal the failure to use “reasonable” efforts to halt or abate prostitution within one’s premises. As previously noted, in so many legal situations *748 we use reasonableness as the standard for performance and action. In criminal trials guilt must be proved beyond a “reasonable” doubt and frequently in civil matters the determination as to liability will hinge on the reasonableness of that which has been done.
The facts set forth in the accusatory instrument herein were sufficient to apprise the defendant of the charge against him under section 230.40 of the Penal Law. The factual portion of the accusatory instrument described the alleged activities of the defendant in aiding and abetting prostitution on his bar premises. The complaint is not invalidated because it did not state that the defendant failed to make reasonable efforts to halt or abate prostitution. That neglect is fairly implied from the claim that he facilitated prostitution on his premises.
The motion to declare section 230.40 of the Penal Law unconstitutional and to dismiss the charge thereunder is denied.
4. The motion to suppress.
The following disposition is made of the suppression motion made by the defendant as part of his omnibus motion.
A. Statement of the charges.
The defendant is charged under count one with the offense of obscenity in the second degree in violation of subdivision 1 of section 235.05 of the Penal Law which is a class A misdemeanor. The complaint which makes this charge states with respect to this offense, in pertinent part, that the defendant while being the owner of Gilmore’s Bar, knowingly and unlawfully did show movies wherein various sexual and obscene acts were performed.
B. Suppression remedy sought by the defendant.
The defendant claims that he is aggrieved by an unlawful search and seizure of his premises, in that a video cassette recorder and various cassettes of films were seized from his premises early in the morning of March 2, 1982 without a warrant and he has moved to suppress the use in evidence of this recorder and the films which were seized. A pretrial suppression hearing was ordered concerning the items seized from the premises of the defendant.
*749 C. Burden of proof.
Where a defendant challenges the admissibility of physical evidence or makes a motion to suppress, he bears the ultimate burden of proving that the evidence should not be used against him. However, the People must, in the first instance, show that the police conduct was reasonable. Thus, though a defendant who challenges the legal test of a search and seizure has the burden of proving that legality, the People are nevertheless put to the burden of going forward to show the legality of the police conduct in the first instance.
D. The hearing.
A hearing was held with respect to this portion of the defendant’s motion. The People called as witnesses on their behalf, Police Officer Kenneth Perry of the Westchester County Police and Detective Bernice Kennedy of the Mount Vernon Police Department. In addition, the court viewed portions of some of the film cassettes which were seized. The defendant called no witnesses on his behalf and presented no testimony on his behalf.
E. Finding of facts.
The court finds the following facts pertinent to the within motion to suppress:
The defendant operates a bar at 506 South 3rd Avenue, Mount Vernon, New York, under the name of Gilmore’s Bar. On March 1, 1982 at about 10:45 p.m. Police Officer Kenneth Perry went to Gilmore’s Bar. The door was locked but Perry was admitted after knocking on the door. He was not in uniform and he did not identify himself. Upon entering, he ordered a beer for which he paid $3. Within the bar area he observed various female performers doing “strip tease” dances to the music of a juke box. At the same time a movie was being shown on a large television screen. The movie depicted men and women performing various sexual acts. There were about 30 to 35 patrons in the bar at the time. Perry observed the movies for about five minutes. He had been assigned to exercise surveillance of the premises as part of an investigation of Gilmore’s Bar, being conducted by the Police Department of the City of Mount Vernon with respect to suspected prostitution within the *750 premises. After midnight, Officer Perry left the bar and met with Lieutenant Astorino and Detective Kennedy of Mount Vernon’s Police Department, to whom he reported his observations. At the instructions of Lieutenant Astorino, Officer Perry returned to the bar shortly before 1:50 a.m. on March 2, 1982. Again the door was locked but Officer Perry was admitted after knocking. Upon entry he announced that he was a police officer and then proceeded to open the door to admit Lieutenant Astorino and Detective Kennedy and other police officers. Detective Kennedy observed a totally naked female near the bar and for a few seconds he also observed movies showing males and females engaging in various explicit sexual acts. Detective Kennedy ordered the defendant to shut down the movies. The defendant did so; ejected a film cassette from the film cassette recorder and placed it with some others. Detective Kennedy seized the recorder and six film cassettes. No warrant was obtained to authorize the seizure of these items.
On February 27 and 28, 1982, Officer Perry also had Gilmore’s Bar under surveillance. During each of these occasions he saw motion pictures on the bar’s television screen depicting men and women engaging in a variety of sexual acts. On October 27, 1981, Detective Kennedy had been at Gilmore’s Bar. On that occasion he also saw movies on the bar’s telévision screen depicting men and women engaging in various sexual acts.
At no time between February 27,1982 and March 1 or 2, 1982, did Officer Perry or Detective Kennedy ask a Judge of any court to view the films, or describe the films to any Judge or seek a warrant for their seizure. After Detective Kennedy saw the films on October 27, 1981, he made no effort to seek or obtain a warrant for their seizure.
In connection with the hearing, parts of the films which were seized were viewed by the court by use of the film recorder which had been seized. The film from one of the cassettes did not fit the recorder and could not be shown. Two of the cassettes contained film which were conceded by the Assistant District Attorney not to be obscene. Parts of the remaining four cassettes which were viewed by the court depicted sexual contact and acts between men and *751 women including fellatio and cunnilingus. Three of these films were titled and indicated the names of the producers with credits for all who participated in making the films. One of the films was identified by a title only.
F. The applicable law.
It is the established rule of law that communicative materials such as writings and films may not be seized solely on the claim or conclusion of a police officer that the materials are violative of the laws against obscenity. Any effort to restrain obscene material will violate the First Amendment, if the determination of obscenity is made solely by a police officer without close judicial supervision and scrutiny. (Quantity of Books v Kansas, 378 US 205; Marcus v Search Warrant, 367 US 717.) That rule flows from the fact that the materials sought to be restrained, being communicative in nature comes within the protection of the First Amendment. It is a rule which is relied upon to protect nonobscene material from unwarranted and illegal restraints. While obscene printed materials and films are not protected by the First Amendment (Roth v United States, 354 US 476, supra; Miller v California, supra), they are, as means and modes of expression and communication, presumptively permissible. Thus, they may not ordinarily be seized without a warrant and warrants to seize such material may not be issued on the mere assertion of obscenity by a police officer. To sustain the seizure of obscene films, they must be subjected to prior judicial scrutiny, focusing searchingly on the question of their obscenity. (Lee Art Theatre v Virginia, 392 US 636.) In this manner the integrity of the First Amendment may be preserved and matter which is not obscene may be afforded the freedom and protection to which it is entitled. Thus, whenever practicable, advance judicial approval must be obtained to justify the seizure of communicative material. (Terry v Ohio, 392 US 1.) The claim that the material seized was contraband, taken during the commission of the crime of obscenity in the presence of the police officer will not ordinarily overcome the restrictions against seizure of First Amendment materials without prior judicial scrutiny. Nor will such action be justified as a seizure made as incidental to a lawful arrest for violation of an *752 obscenity statute. In United States v Brown (274 F Supp 561) the court noted that the prohibition against unsupervised seizures of First Amendment materials “cannot be avoided by the rubric of a search incident to a lawful arrest” and, further, that the procedures necessary to protect First Amendment materials against unwarranted restraints “are impossible to follow in a seizure incident to arrest” (supra, p 565).
There are some, but few exceptions to the prohibition against warrantless seizures of communicative materials. In Roaden v Kentucky (413 US 496), the court, after confirming (p 502) the accepted rule that “a warrant for the seizure of allegedly obscene [materials] could not be issued on the conclusory opinion of a police officer”, observed (p 505), however, that “[w]here there are exigent circumstances in which police action literally must be ‘now or never’ to preserve the evidence of the crime, it is reasonable to permit action without prior evaluation.” By way of further explanation, the court, in a footnote to Roaden (supra, p 505, n 6) took judicial notice of the fact that “films may be compact, may be easy to destroy or to remove to another jurisdiction, and may be subject to pretrial alterations by cutting out scenes and resplicing reels.”
The People have sought to justify the warrantless seizure of the films herein as having been necessary by reason of such “exigent circumstances”.
Another exception has been noted with respect to films which have been picturesquely characterized as “fungible smut”. (United States v Cangiano, 491 F2d 906.) They may be described as films without titles, credits or other distinguishing marks which depict men and women engaging in explicit sexual activities. The unidentifiable nature of these films makes them difficult to describe for the purposes of a warrant which requires specificity and difficult to purchase for presentation to a court for prior judicial scrutiny. The execution of a warrant which would describe the films to be seized, in general terms as hard-core pornography or the like would impose upon the police officer the exercise of the very judgment as to obscenity which is ordinarily prohibited. A warrant drawn in such general terms would be subject to attack as being void for vague *753 ness. Faced with the dilemma posed by the conflicting claims of First Amendment protections and the need to enforce the obscenity statutes courts have in cases of “fungible smut” sometimes sustained warrantless searches and seizures. It would appear that in such cases reason would discern a minimal danger to First Amendment rights when balanced against the greater danger of permitting open violations and evasions of the laws against obscenity. (See People v Wrench, 73 Misc 2d 434, and the cases cited therein.)
G. The decision on the suppression motion.
It is apparent that there were no “exigent” circumstances herein which justified a warrantless search and seizure. Officer Perry saw allegedly obscene movies on February 27 and February 28, 1982 before he entered the bar on March 1 and 2, 1982 and Detective Kennedy saw similar movies at Gilmore’s Bar on October 27, 1981. It may have been impractical to have had a Judge of this court view the films before their seizure, but there was every opportunity to describe the films to a Judge and to obtain thereby a warrant for their seizure. It is not essential that the court witness every act which is alleged to be criminal. In the matter of viewing allegedly obscene films, it is sufficient (particularly where viewing would be impractical) that the warrant be issued after searching inquiry and examination of the observer who has seen the film and who is relied upon for the issuance of the warrant. That is the clear implication of Lee Art Theatre v Virginia (392 US 636, supra). Nor were the films so unidentifiable that they were incapable of being specifically delineated in a warrant. Three of the offending films bore all the credits and identifying marks of commercial films. Only one of them bore a title only. The exception of “fungible smut” does not apply here.
For these reasons the motion to suppress the film cassettes and the recorder which were seized is granted.