Spencer TUNICK, Plaintiff–Appellee,

v.

Howard SAFIR, in his official capacity as the Police Commissioner of the City of New York, and the City of New York, Defendants–Appellants.

Docket No. 99–7823

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1999

Decided May 19, 2000

Further Concurrence and Dissent Decided July 11, 2000.

Ronald L. Kuby, New York, NY (Daniel M. Perez, Law Offices of Ronald L. Kuby; Arthur Eisenberg, Norman Siegel, Christopher Dunn, New York Civil Liberties Union Foundation, on the brief), for Plaintiff–Appellee.

Stephen J. McGrath, Deputy Chief Appeals Division, Corporation Counsel of the City of New York, New York, NY (Michael D. Hess, Corporation Counsel of the City of New York, Leonard Koerner, Alan Beckoff, of counsel, on the brief), for Defendants–Appellants.

Before: VAN GRAAFEILAND, CALABRESI, and SACK, Circuit Judges.

CALABRESI, Circuit Judge, concurs.

SACK, Circuit Judge, concurs.

VAN GRAAFEILAND, Circuit Judge, dissents.

PER CURIAM:

On July 13, 1999, the plaintiff Spencer Tunick filed a complaint in the Southern District of New York seeking an injunction preventing the City of New York and its Police Commissioner, Howard Safir, (collectively, the "City") from interfering with a "photo shoot" that Tunick proposed to conduct on Sunday, July 18, 1999. Tunick, an internationally recognized photographer, planned to photograph seventy-five to one hundred nude models arranged in an abstract formation shortly after dawn on a residential street in lower Manhattan. He submitted evidence from which the district court (Harold Baer, Jr., *Judge*) concluded that the New York City police were likely to arrest Tunick and his models before the photographic session could be completed. On July 16, the district court preliminarily enjoined the City from interfering with the session.

On July 17, 1999, the day after the district court's issuance of the preliminary injunction and the day before the planned photographic session, a three-judge panel of this Court stayed the preliminary injunction, ordering that the appeal be fully briefed and argued on an expedited basis. Argument was heard on September 13, 1999.

On appeal, the City argued solely that New York state law, which criminalizes public nudity and the promotion thereof, compelled it to stop the proposed photographic session. *See* N.Y. Pen. Law §§ 245.01, 245.02. Tunick countered that

the photographic session is exempt from the ban on public nudity because §§ 245.01 and 245.02 do "not apply to . . . any person entertaining or performing in a play, exhibition, show, or entertainment," *id.*, and that arresting him and his models before he had an opportunity to take his photographs would violate the First Amendment.

On March 24, 2000, we certified three questions regarding §§ 245.01 and 245.02 to the New York Court of Appeals. *See Tunick v. Safir*, 209 F.3d 67 (2d Cir. 2000).* Judge Calabresi concluded that certification was appropriate pursuant to a six-part test described in detail in his opinion. *Id.* at 81–82.

Judge Sack disagreed, reasoning that because the photographic session was expressive activity and the threatened arrest of Tunick and his models would take place before it was completed, the arrest would constitute a prior restraint on expression. *Id.* at 93–94. Inasmuch as the session was neither clearly illegal under applicable law nor asserted to be contrary to a valid licensing ordinance, the prior restraint was in his view unconstitutional and the certification proposed by Judge Calabresi was inappropriate because of the delay inherent in the certification process. *Id.* at 94–100. Judge Sack nonetheless concurred in the judgment, concluding that as a result of the differences in views among the panel members, certification of the questions to the New York Court of Appeals was the speediest practicable method for resolving Tunick's assertion of rights. *Id.* at 96–100.

Judge Van Graafeiland, in a dissent filed separately on April 13, 2000, maintained

---

* The three certified questions were:
(1) Whether a photographic shoot involving 75 to 100 nude bodies arranged in an abstract formation on a public street constitutes entertainment or performance in a "play, exhibition, show or entertainment" within the meaning of the exception to N.Y. Pen. Law § 245.01 and § 245.02.
(2) If the answer to the first question is yes, whether the exceptions to N.Y.Pen. Law

§ 245.01 and § 245.02 are limited to indoor activities.
(3) If the answer to the first question is no, or if the answers to the first and second questions are both yes, whether N.Y. Pen. Law § 245.01 and § 245.02, so interpreted, are valid under the Constitution of the State of New York.

that the appeal should have been dismissed as moot. *Id.* at 96–100.

On May 12, 2000, the New York Court of Appeals, by *per curiam* opinion, *Tunick v. Safir*, 94 N.Y.2d 709, 709 N.Y.S.2d 881, 731 N.E.2d 597 (2000), while "underscor[ing] the great value in New York's certification procedure where Federal appellate courts or high courts of other States are faced with determinative questions of New York law on which this Court has not previously spoken," *id.* at 599, declined to accept certification "in the mutual interest of expeditious resolution of the preliminary injunction/prior restraint issue," *id.* at 599.

We now hold that in light of Tunick's showing of irreparable injury and the clear likelihood of Tunick's success on the merits, it was not an abuse of discretion for the district court to grant the preliminary injunction. *See Beal v. Stern*, 184 F.3d 117, 122–23 (2d Cir.1999). We therefore dissolve the stay entered on July 17 and remand the case to the district court with instructions that (unless between the date of the original preliminary injunction and the date on which the district court acts it has become clearly illegal for Tunick to take the photographs in accordance with his plans) the court (a) fix a date, in consultation with the parties, for the taking of the photographs, and (b) re-enter the injunction prohibiting, for a limited period of time early in the morning on a non-business day, the City of New York and its agents from arresting Tunick or his models in connection with the taking of the photographs, or otherwise interfering with Tunick or his models in the taking of the photographs, until the taking of the photographs is completed in accordance with the court's order. The district court shall, in its discretion, include in the injunction such other conditions as it deems appropriate to ensure a minimal intrusion on the neighborhood and its residents consistent with the taking of the photograph or photographs in issue.

JUDGE CALABRESI concurs in an opinion to follow.

JUDGE SACK concurs for the reasons stated in his opinion of March 24, 2000, *Tunick v. Safir*, 209 F.3d 67, 89–100 (2d Cir.2000) (Sack, J., concurring in the judgment).

JUDGE VAN GRAAFEILAND dissents in an opinion to follow.

CALABRESI, Circuit Judge, concurring:

Defendants Howard Safir, in his official capacity as the Police Commissioner of the City of New York, and the City of New York (collectively "the City") appealed from the grant of a preliminary injunction by the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*). The district court had prohibited the City from interfering with a proposed photo shoot of 75 to 100 nude models arranged in an abstract formation, to be conducted by plaintiff Spencer Tunick on Sunday, July 18, 1999, between 5:30 a.m. and 6:30 a.m. in a residential Manhattan neighborhood. On July 17, 1999, a three-judge panel of this court stayed the preliminary injunction, pending an expedited appeal. On appeal, the City, arguing solely that New York state law prohibits public nudity, *see* N.Y. Pen. Law § 245.01 (McKinney 1989), and the promotion thereof, *see id.* § 245.02, contended that the injunction had been erroneously granted. In making this argument, the City maintained that the exemption contained in the state law for "any person entertaining or performing in a play, exhibition, show or entertainment," *see id.* §§ 245.01, 245.02, did not apply to Tunick's proposed photo shoot. To obtain a definitive reading of the state statute, we certified to the New York Court of Appeals the following questions:

(1) whether a photographic shoot involving 75 to 100 nude models arranged in an abstract formation on a public street constitutes entertainment or performance in a "play, exhibition, show or entertainment" within the meaning of the exemption to N.Y. Pen. Law § 245.01 and § 245.02;

(2) if the answer to the first question is yes, whether the exemption to N.Y. Pen. Law § 245.01 and § 245.02 is limited to indoor activities; and

(3) if the answer to the first question is no, or if the answers to the first and second questions are both yes, whether N.Y. Pen. Law § 245.01 and § 245.02, so interpreted, are valid under the Constitution of the State of New York.

*Tunick v. Safir*, 209 F.3d 67, 68–69 (2d Cir.2000) (*"Tunick I"*).[1]

Emphasizing "the great value in New York's certification procedure," the New York Court of Appeals nevertheless declined certification. *Tunick v. Safir*, 94 N.Y.2d 709, 709 N.Y.S.2d 881, 731 N.E.2d 597, 599 (2000) (*"Tunick II"*). It noted, *inter alia*, that this case involved a preliminary injunction against an alleged First Amendment prior restraint and therefore required a more "expeditious resolution" than was feasible in light of the state court's "necessary decisional process." *Id.* at 599.

On May 19, 2000, this court, with Judge Van Graafeiland dissenting, entered an or-der, by a per curiam opinion, finding that the district court's grant of the preliminary injunction was not an abuse of discretion. *See Tunick v. Safir*, 228 F.3d 135, 136–37 (2d Cir.2000) (per curiam) (*"Tunick III"*). We therefore lifted the stay and remanded the case to the district court to fix a new date for the photo shoot and to specify in the injunction that the City and its agents would be barred from arresting Tunick and the models or otherwise interfering with the photo shoot until after the photographs had been taken.[2] We also instructed the district court, "in its discretion, [to] include in the injunction such other conditions as it deems appropriate to ensure a minimal intrusion on the neighborhood and its residents consistent with the taking of the photograph or photographs in issue." *Id.* at 136–37. The per curiam noted that I would thereafter file an opinion explaining my reasons for concurring in the disposition. I now do so.

## DISCUSSION

We review a district court's grant of a preliminary injunction for an abuse of dis-

---

**1.** Judge Van Graafeiland dissented from our certification. *See Tunick I*, 209 F.3d at 96–100 (Van Graafeiland, *J.*, dissenting). We are particularly troubled by a portion of his dissent appearing at 209 F.3d at 98. Judge Van Graafeiland writes, "Judge Sack advised me and Judge Calabresi [in December] that he did not agree with the proposed certification, and I expressed my agreement with that portion of Judge Sack's response. Another three months elapsed with no further action on the part of Judge Calabresi until, on March 10, 2000, he circulated a 46–page opinion ordering the following . . . set of proposed certified questions [different from another set that he had previously circulated]." *Id.* The statement may be misunderstood to suggest that Judge Sack and I acted with unseemly haste. In fact, Judge Sack and I provided drafts of our opinions to Judge Van Graafeiland in December 1999. (One of those drafts was the "advice" from Judge Sack "that he did not agree with the proposed certification" to which Judge Van Graafeiland refers.) My draft set forth substantially the views contained in my opinion in this appeal eventually published on March 24. In January and Feb-

ruary, we all exchanged memoranda with respect to the drafts. But on February 24, Judge Van Graafeiland wrote Judge Sack and me telling us that he could not file a dissent until there was a majority opinion from which to dissent. He said that, when Judge Sack and I agreed, he would prepare a dissent, but it would not in any event be before May. It was then that Judge Sack and I, with the approval of the Chief Judge, decided to resolve this appeal as soon as practicable inasmuch as it had been heard on an expedited basis, more than five months had elapsed since argument, three months since Judge Sack and I had first circulated draft opinions, and the First Amendment context of the appeal made it time sensitive. Judge Sack has authorized me to say that he joins in this statement.

**2.** The original preliminary injunction entered by the district court, by contrast, prohibited the City and its agents from arresting Tunick and his models at all. *See Tunick v. Safir*, No. 99 CIV. 5053, 1999 WL 511852, at *1 (S.D.N.Y. July 19, 1999).

cretion. *See Otokoyama Co. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir.1999). In order to obtain a preliminary injunction, a party must establish irreparable harm and either (a) a likelihood of success on the merits or (b) a sufficiently serious question going to the merits, with a balance of hardships tipping in favor of the party requesting the preliminary injunction. *See id.* Because, however, plaintiff seeks a mandatory injunction, that is, he asks to "stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme," *Bery v. City of New York,* 97 F.3d 689, 694 (2d Cir.1996), he must establish a clear or substantial likelihood of success on the merits, *see Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 34 (2d Cir.1995).

Violations of First Amendment rights are presumed irreparable. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Accordingly, "the very nature of [Tunick's] allegations" satisfies the requirement that he show irreparable injury. *Bery,* 97 F.3d at 694. The only remaining issue, therefore, is whether Tunick has established a clear likelihood of success on the merits. And because the City's sole argument against the injunction is based on the New York statute regulating public nudity, Tunick has met that burden if there is a clear likelihood that

the New York law does not bar the proposed photo shoot.

As noted above, New York state law forbids public nudity and the promotion thereof, but provides an exception for "any person entertaining or performing in a play, exhibition, show or entertainment." N.Y. Pen. Law §§ 245.01, 245.02. Interpreting this exception to apply only to "performances or exhibitions that [take] place indoors before audiences," the City argues that state law prohibits Tunick's proposed photo shoot, since it is not a performance or exhibition scheduled to occur indoors before an audience. Appellant's Brief at 14.

Because, on certification, the New York Court of Appeals declined to interpret the relevant sections of the statute at issue, that task now falls to us. New York's highest court, of course, has a complete right to decline certification; and indeed, nothing requires it to provide any explanation for such a decision. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.17(d).[3] But the fact that it has failed to answer the certified questions does not mean that we must, as a result, forego interpreting the state statute and decide the case on federal constitutional grounds. Quite the contrary, certification demonstrates our respect for the supremacy of the state's highest tribunal in interpreting its own laws. Declination of certification, for whatever reason, frees us, with the ap-

---

**3.** While we appreciate explanations such as those given in this case by the New York Court of Appeals, we have no right to expect them. Indeed, it is precisely because the New York Court of Appeals can refuse certification as readily as it declines to hear appeals from decisions of the appellate divisions that the argument, often made but none the better for its frequency, that certification imposes a burden on busy state courts, *see e.g., Elliott Assocs. L.P. v. Banco de la Nacion,* 194 F.3d 363, 370 (2d Cir.1999) (declining to certify a question to the New York Court of Appeals and reasoning in part that "[t]he procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great") (quoting *Kidney v. Kolmar Labs., Inc.,* 808 F.2d 955, 957 (2d Cir.1987)), is fallacious. With these federal court asser-

tions, it is well to contrast the statements of the New York Court of Appeals encouraging certification. *See, e.g., Tunick II,* 731 N.E.2d at 599 ("underscor[ing] the great value in New York's certification procedure"); *Rufino v. United States,* 69 N.Y.2d 310, 311, 514 N.Y.S.2d 200, 506 N.E.2d 910 (1987) (lauding "the value of the certification process, in saving 'time, energy, and resources and help[ing] to] build a cooperative judicial federalism'") (quoting *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974) (alteration in *Rufino* )). Significantly, these comments are regularly made, even in cases in which the New York court declined certification. *See Tunick II,* 731 N.E.2d at 599; *Rufino,* 69 N.Y.2d at 311, 514 N.Y.S.2d 200, 506 N.E.2d 910.

proval of the New York Court of Appeals, to do the best we can to read the state statute correctly.[4]

The issue before us, therefore, is not whether New York State or New York City can constitutionally forbid public nudity. That is a question as to which I need take no stand in this case. The issue in this case is, rather, whether they have prohibited the kind of nudity that Tunick's photo shoot entails.[5]

As noted in my previous opinion in this case, the answer to that question, which turns on the proper interpretation of the statute before us, is essentially unaided by state court decisions. *See Tunick I*, 209 F.3d at 71–72 (Opinion of Calabresi, *J.*). Thus, on the question of whether the statute prohibits nude photography, I have found only two cases, by municipal courts, that arguably take conflicting positions. *Compare People v. Wilhelm*, 69 Misc.2d 523, 330 N.Y.S.2d 279, 280–81 (City Ct. Buffalo 1972) (interpreting a predecessor version of the statute that had the same exception as the one in the current version, in a case in which the defendant did not claim that the photo shoot itself was an exhibition or showing, to prohibit nude photography, but, as a result, finding the statute unconstitutional as applied), *with People v. Gilmore*, 120 Misc.2d 741, 468 N.Y.S.2d 965, 970 (City Ct. Mount Vernon 1983) (reasoning that the statute was not overbroad because "persons engaged in the photographing of nude women … are not threatened by Penal Law 245.02").

In the absence of persuasive decisions, we turn to New York's canons of statutory construction. Under these, we must begin with "the plain meaning of the words of a statute." *In re Hernandez*, 93 N.Y.2d 781, 786, 698 N.Y.S.2d 590, 720 N.E.2d 866 (1999). And in doing so, we are to "resort … to the natural signification of the words employed." *In re Grand Jury Subpoena Duces Tecum Served on the Museum of Modern Art*, 93 N.Y.2d 729, 738, 697 N.Y.S.2d 538, 719 N.E.2d 897 (1999) (quoting *Tompkins v. Hunter*, 149 N.Y. 117, 122–23, 43 N.E. 532 (1896)). "[I]f [those words] have a definite meaning, which involves no absurdity or contradiction, there

**4.** In this regard, it is worth noting that the decision of the New York Court of Appeals to decline certification in order to allow for a more "expeditious resolution of the preliminary injunction/prior restraint issue" in the case before us, *Tunick II*, 731 N.E.2d at 599, illustrates the amenability of the certification procedure even to time-sensitive First Amendment questions. *Cf. Tunick I*, 209 F.3d at 78–79 (opinion of Calabresi, *J.*) (noting that a federal court should certify only if it believes that the delay inherent in certification will not unduly harm the federal right asserted); *id.* at 95 (opinion of Sack, *J.*) (stating that, where a prior restraint is involved, the delay caused by certification "is constitutionally intolerable"). In a sense, neither of the opinions cited above adequately considered that the state courts themselves have a role to play in deciding whether certification can take place consistently with the underlying rights at issue. But, as this case illustrates, a state court will likely accept certification in cases of this sort only where it believes that the "interest of expeditious resolution" does not counsel otherwise, that is, where it believes that it can resolve the questions quickly. *Tunick II*, 731 N.E.2d at 599. That the New York Court of Appeals rejected certification in the instant case underscores the fact that state courts as much as federal courts are sensitive to time in relation to alleged constitutional rights. As a result, the declination also emphasizes the flexibility of certification and the ways in which it can be tailored to accommodate, together with the federal interest in preventing irreparable harms to potential federal rights, the state interest in having state courts either decide important unresolved state law issues or decline to do so.

**5.** New York Penal Law § 245.01 and § 245.02 expressly allows any local government to opt out of the exception for "a play, exhibition, show or entertainment." N.Y. Pen. Law § 245.01 ("Nothing in this section shall prevent the adoption by a city, town or village of a local law prohibiting exposure of a person as herein defined in a public place, at any time, whether or not such person is entertaining or performing in a play, exhibition, show or entertainment."); N.Y. Pen. Law § 245.02 (substantially the same). Thus, the statute seemingly permits local governments to forbid all public nudity by local ordinance. New York City has concededly never enacted such an ordinance.

is no room for construction and courts have no right to add to or take away from that meaning." *Id.* (quoting *Tompkins,* 149 N.Y. at 123, 43 N.E. 532).

Applying these canons, I think that Tunick has a clear likelihood of success on his claim that his proposed photo shoot falls within the statutory exception. This is so because the abstract arrangement of 75 to 100 nude models draped across a public street can more than plausibly be deemed an exhibition, that is, "a public ... showing ... esp[ecially] of [a] work[ ] of art." *Webster's Third New International Dictionary* 796 (1993). As the plain language of the statute has a definite meaning, and since reading the word "exhibition" to encompass the proposed photo shoot involves no absurdity or contradiction, there is no apparent reason to construe a statute, that nowhere references audiences or locations, to apply, as the City urges, only to exhibitions that occur indoors before audiences.

Moreover, New York's canons of construction require courts "to avoid interpreting [a New York statute] in a way that would render [it] unconstitutional if such a construction can be avoided." *National Ass'n of Indep. Insurers v. State,* 89 N.Y.2d 950, 952, 655 N.Y.S.2d 853, 678 N.E.2d 465 (1997) (quoting *Alliance of Am. Insurers v. Chu,* 77 N.Y.2d 573, 585, 569 N.Y.S.2d 364, 571 N.E.2d 672 (1991) (internal quotation marks omitted)). A reading of the statute to exempt Tunick's proposed activity from the ban on public nudity not only comports with a highly plausible meaning of the statute, but it also avoids the significant constitutional difficulties that would result from the City's interpretation.

As I noted in my previous opinion:

> One need not contemplate why, on the City's reasoning, a totally naked production of *Hamlet* could be staged in the middle of Grand Central Station during rush hour, while Tunick's photo shoot had to be banned regardless of the time, place, or manner in which it occurred, to say that the statute as interpreted by

the City would raise serious constitutional issues. It is enough to ask why a nude performance with an audience would be permitted, and a photo shoot in the same place would be prohibited, to suggest that significant constitutional problems, based on irrationality, attend the City's reading of the statute.

*Tunick I,* 209 F.3d at 84 (opinion of Calabresi, *J.*). This is not to say, of course, that the statute so read would be unconstitutional. It is only to assert the obvious: an interpretation that treats photographic exhibitions in the same way as other exhibitions and fails to introduce, entirely absent, indoor/outdoor and audience/non-audience distinctions into the statute avoids possible constitutional problems, while an opposite construction requires that such issues be faced.

It is also not to say that the City would be constitutionally barred from imposing reasonable time, place, or manner restrictions on the conduct of any photo shoot. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Indeed, if one were to read some implicit limitations into the exception, it would be far more plausible to take the terms "play[s], exhibition[s], show[s] or entertainment," N.Y. Pen. Law §§ 245.01, 245.02, to mean nude events that occur in controlled circumstances, that is, under conditions that "minim[ize] intrusion[s] on the neighborhood and its residents," *Tunick III,* 228 F.3d at 136–37, than it would be to limit the statute—as the City would have us do—to exhibitions that occur indoors before audiences without regard to attendant disruptions. Because, however, the City has made no argument that its efforts to limit Tunick's proposed artistic activity were simply, or even in part, constitutionally permissible efforts to impose reasonable time, place, or manner restrictions, I need not today consider such an interpretation. I need do no more than conclude that the City's tortured reading, both as a

matter of language and of underlying policy, is unlikely to prevail.

Because I believe that Tunick has a clear likelihood of establishing that state law does not prohibit his artistic endeavor, I concur in our per curiam decision holding that the district court did not abuse its discretion in issuing the preliminary injunction.

I also concur in our decision to modify the injunction in a manner that effectively allows the City to arrest Tunick or his models after, but not before, the completion of the photo shoot. *See Tunick III,* 228 F.3d at 137–38. I do so because the plaintiff conceded at oral argument that his purpose in bringing the litigation was "to enjoin a prior restraint" and not to prevent the City from subsequently seeking to sanction him. Tr. Oral Arg. at 28.[6] Under the circumstances, there is no reason to consider whether there might be legal grounds to bar the City from prosecuting plaintiff or his models subsequent to the completion of the photo shoot, and I decline to do so.

There is, moreover, nothing inconsistent between finding "most likely" an interpretation of the New York statute that allows the photo shoot and permitting such an interpretation to be further tested though arrests after the shoot is completed. This is so for two reasons. First, the question presented on this appeal, since it is from the grant of a preliminary injunction, is whether Tunick has established a clear *likelihood* of success on the merits. *See Tom Doherty Assocs., Inc.,* 60 F.3d at 34. Accordingly, in resolving the case, I have expressed my view only as to the most probable reading of the statute. Second, § 245.01 and § 245.02 are matters of New York law and, therefore, the interpretation of those sections to which I—a federal judge—subscribe is, necessarily, only a prediction of state law. *Cf. Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir.1994) (stating—in a diversity context—that when a federal court applies state law, its role is "carefully [to] predict how the highest court of the state would resolve" the state law question). As a result, any finding—even by a majority of this court—that the New York statute does not prohibit Tunick's proposed artistic activity would in no way be binding on New York state courts. *See, e.g., Hartnett v. New York City Transit Auth.,* 200 A.D.2d 27, 612 N.Y.S.2d 613, 616 (2d Dep't 1994), *aff'd,* 86 N.Y.2d 438, 633 N.Y.S.2d 758, 657 N.E.2d 773 (1995). All this means that the City, should it elect to prosecute plaintiff and his models subsequent to the completion of the photo shoot, would have the opportunity to obtain a definitive answer to the statutory questions presented in this appeal from the only court system authorized to give that answer.

I concur in the judgment of the court.

VAN GRAAFEILAND, Senior Circuit Judge, dissenting:

When I dissented from my colleagues' unsuccessful request for certification to the New York Court of Appeals, *see Tunick v. Safir,* 209 F.3d 67, 96–100 (2d Cir.2000), I relied upon the following undisputed facts:

1. On July 13, 1999, Tunick filed a complaint in the Southern District of New York in which he asked the court to enjoin the defendants from interfering with a planned photo shoot of nude models to be held on July 19, 1999 on Madison Street in New York City. *Id.* at 96.

2. On the same day, Tunick served an order to show cause why an order should not be issued enjoining the defen-

---

**6.** Moreover, because we are free to do so under the equitable powers at play when injunctions are issued, *see, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 132, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (noting the broad equitable powers of federal courts to tailor remedies to the cir-

cumstances at hand), our per curiam, correctly in my view, urges the district court to take care to minimize, by appropriate restrictions of a time, place, and manner sort, the disruption to the surrounding neighborhood the photo shoot might otherwise create.

dants from interfering with the Madison Street photo shoot. *Id.* at 97.

3. In the opening paragraph of the district court's Opinion and Order, it described Tunick's application as follows:

Plaintiff Spencer Tunick seeks a preliminary injunction that will enjoin defendants from arresting or interfering with Tunick and 75 to 100 nude models, to be placed in an abstract formation on Madison Street between Catherine and Market streets at 5:30 a.m. on Sunday July 18, 1999.

4. In the closing paragraph of the Opinion and Order, the district court, in rejecting the City's "time, place and manner" argument, said:

Most importantly, given the fact that the City has been unable to offer a single alternative location, I am not convinced that the time, place and manner restriction is narrowly tailored or that it is [sic] has no reference to the content of the regulated speech. Having first suggested alternative sites might be agreeable and then failing to pinpoint a single alternative location, the City cannot expect this Court to simply take its word that the restriction is reasonable and that the proposed location and date is an inappropriate time and place for the nude photo shoot. Accordingly, the photo shoot will proceed on Sunday morning at 5:30 a.m. at the proposed location but it shall not last beyond 6:30 a.m. and the nudity of the models will be limited to the representation given by plaintiff. The Police Department is directed to provide a suitable police presence.

It is my understanding that the photo shoot requested by Tunick was not held until June 4, 2000. Moreover, it was not held on Madison Street. Instead, it was conducted at an "alternative location", an area between Mangin and Baruch Streets, located about a mile to the northeast of Madison Street. The controversy between the parties relative to a Madison Street

shoot, if not already moot when I wrote my original dissent, clearly became moot when the parties decided to conduct the shoot on Mangin Street. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citations omitted); *see also United States v. Alaska S.S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920); *Arthur v. Manch,* 12 F.3d 377, 380 (2d Cir.1993).

This being so, I see no need to further muddy the waters in which this case has been submerged by discussing the absence of the uniformity between my colleagues that is essential to a true *per curiam* opinion. Separately-submitted, multi-page opinions, which agree only in a result that was not effected, should not remain on the record as precedential authority in future Second Circuit litigation.

The appeal should be dismissed, and the matter remanded to the district court with instructions to dismiss the complaint. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950); *In re Chateaugay Corp.,* 988 F.2d 322, 325 (2d Cir.1993).