*784
 
 OPINION OF THE COURT
 

 Smith, J.
 

 At issue in this appeal is whether Local Laws, 1997, No. 49 of the City of New York codified in the Administrative Code of the City of New York § 21-126
 
 et seq.,
 
 is contravened by the Eligibility Verification Review (EVR) procedure for AIDS and clinical/symptomatic HIV clients served by the Division of AIDS Services Income Support (DASIS) of the Human Resources Administration (HRA). For the reasons set forth below, we conclude that it is, and that the order of the Appellate Division should be reversed.
 

 I.
 

 In July 1997, petitioner, who suffers from clinical/ symptomatic HIV, applied to DASIS for public benefits and services. He was subsequently interviewed at the Manhattan DASIS office, where he completed an application and submitted all necessary documents needed to receive public benefits. Thereafter, petitioner was informed that he was scheduled for an EVR investigation at HRA’s Brooklyn office. In response to an inquiry, HRA advised him that without an EVR interview, he would not receive public assistance.
 

 Petitioner commenced this CPLR article 78 proceeding challenging HRA’s requirement that he submit to an EVR investigation.
 
 [1]
 
 Supreme Court granted the petition, concluding that the Administrative Code of the City of New York did not permit the additional investigation for establishing eligibility for public benefits and services. The Appellate Division reversed and dismissed the petition, holding that EVRs do not violate the Administrative Code. We disagree and now reverse the order of the Appellate Division.
 

 II.
 

 DASIS is an agency within the Department of Social Services established administratively by HRA in 1985 to assist persons with clinical/symptomatic HIV or AIDS in securing vital public benefits and services. Local Law No. 49, which was signed into law in 1997, mandates that the staff of DASIS “provide access to benefits and services * * * to every person with clinical/symptomatic HIV illness * * * or with AIDS * * *
 
 *785
 
 who requests assistance, and * * * ensure the provision of benefits and services to eligible persons” (Administrative Code § 21-126).
 

 Section 21-128 (a) (1) of the Code defines “Access to benefits and services” as:
 

 “[T]he provision of assistance by staff of [DASIS] to a person with clinical/symptomatic HIV illness or with AIDS
 
 at a single location
 
 in order to apply for publicly subsidized benefits and services, to
 
 establish any and all elements of eligibility
 
 including, * * * those elements required to be established for financial benefits, and to maintain such eligibility and shall include * * * assistance provided at a field office of the department, at the home of the applicant or recipient, at a hospital where such applicant or recipient is a patient or at another location, in assembling such documentation as may be necessary to establish any and all elements of eligibility and to maintain such eligibility” (emphasis supplied).
 

 Section 21-128 (b) further delineates the types of benefits and services provided by DASIS and states that:
 

 “Any eligible person shall receive only those benefits and services for which such person qualifies in accordance with the applicable eligibility standards established pursuant to local, state or federal statute, law, regulation or rule. * * * The commissioner shall have the authority to provide access to additional benefits and services and ensure the provision of such additional benefits and services whenever deemed appropriate. The requirements with respect to such access to and eligibility for benefits and services
 
 shall not be more restrictive than those requirements mandated by state or federal statute, law, regulation or rule”
 
 (Administrative Code § 21-128 [b] [emphasis supplied]).
 

 Accordingly, when an individual suffering from either clinical/symptomatic HIV illness or AIDS applies for public assistance benefits and services, that application is referred to DASIS. The DASIS staff member conducts a field visit and a public assistance interview to establish eligibility for publicly subsidized benefits. Additionally, every six months DASIS col
 
 *786
 
 lects and verifies information in order to recertify continuing eligibility for public assistance (see, Administrative Code § 21-218 [e]).
 

 The EVR program was implemented in 1995 and is administered by HRA’s Office of Revenue and Investigation. This program investigates and verifies all applications of persons seeking subsidized public benefits in New York City. According to HRA’s Policies and Procedures Manual, DASIS clients are interviewed by EVR staff to “ensure that all DASIS clients are deemed eligible prior to case acceptance.” EVR investigators “specially trained in eligibility verification * * * provide intensive assessment of each applicant’s eligibility,” which includes “home visits [and] in-depth interviews.” Moreover, EVR investigators may contact other individuals and organizations to obtain information regarding an applicant’s eligibility, income and resources.
 

 III.
 

 The resolution of this appeal turns on the construction of Local Law No. 49. Thus, we begin our analysis with the familiar maxim that statutory interpretation requires courts to first look to the plain meaning of the words of a statute. Next, we look at the spirit and purpose of the statute and the objectives sought to be accomplished by the Legislature. Indeed, the general spirit and purpose of the statute is an important aid in understanding the meaning of its words.
 

 We conclude that the EVR procedure, when applied to DASIS clients, violates the language of Local Law No. 49 and contravenes the purpose of the statute. The statutory language makes clear that
 
 DASIS
 
 staff, rather than EVR investigators, must provide and ensure access to benefits and services, which includes “establishing] any and all elements of eligibility including * * * those elements required to be established for financial benefits, and to maintain such eligibility” (Administrative Code § 21-128 [a] [1]).
 

 Respondents’ contention that EVR is merely a process and not an additional eligibility determination is unavailing. Respondents concede that an applicant’s benefits may be denied on the basis of noncompliance with an EVR review, which goes to the heart of eligibility. Indeed, the very notice sent by EVR investigators to an applicant who fails to complete an EVR interview states that
 
 “[cjompliance with the EVR review is an eligibility requirement.
 
 Your failure to report for the interview or to respond to notices left at your home by EVR investigators
 
 *787
 
 may result in rejection of your application or closing of your case. You must provide all the documents * * * needed to help establish your eligibility” (emphasis supplied). Thus, notwithstanding that BASIS has already determined an applicant’s eligibility for public benefits and services, HRA also requires applicants to undergo EVR investigations in order to establish eligibility. We therefore conclude that EVR investigations for BASIS clients create eligibility factors which are incompatible with section 21-128 (a) (1).
 

 Furthermore, section 21-128 (b) of the Administrative Code expressly states that, “The requirements with respect to such access to and eligibility for benefits and services shall not be more restrictive than those requirements
 
 mandated
 
 by state or federal statute, law, regulation or rule” (emphasis supplied).
 
 [2]
 
 Respondents point to Social Services Law §§ 132 and 134, as well as the corresponding regulations promulgated thereunder, to bolster their contention that EVR investigations are mandated by State law. Although these statutes and regulations may authorize the EVR process, they do not
 
 mandate
 
 it.
 

 Pursuant to Social Services Law § 132 (1), “When an application for assistance or care is received * * * an investigation and record shall be made of the circumstances of such person.” The statute permits the investigation to secure information necessary to determine if an applicant is, in fact, in need of assistance by permitting an examination of, among other things, an applicant’s residence, age and physical condition. Furthermore, the statute delineates that “ [n] otwithstanding any other inconsistent provision of law, the commissioner shall provide by regulation for methods of determining eligibility for public assistance” (Social Services Law § 132 [3]). Finally, section 134 of the Social Services Law mandates that any social service of
 
 *788
 
 ficial responsible for investigating any application for public assistance must maintain close contact with the applicant granted public assistance, including frequent visits to the home or institution.
 

 While the foregoing provisions mandate that social service officials conduct investigations of applicants and grantees of public assistance, the statutes do not require that these investigations be executed by EVR investigators. Instead, the statutes merely provide a skeletal framework within which the Commissioner of Social Services must act.
 
 [3]
 
 Here, Local Law No. 49 effectuates the intent of the State statutes by directing
 
 DASIS
 
 to (1) establish an applicant’s eligibility, (2) take necessary steps to maintain such eligibility, and (3) conduct recertification determinations with regard to persons with clinical/symptomatic HIV illness or AIDS, as directed by the Commissioner and in accordance with State and Federal law
 
 (see,
 
 Administrative Code § 21-128 [a] [1]; [e], [f]).
 

 Respondents contend that if the City Council had intended to eliminate EVR for DASIS clients, “they could easily have done just that.” But clearly the City Council could not have eliminated a verification process mandated by State or Federal law. Thus, because Local Law No. 49 prohibits the imposition of any additional requirements not
 
 “mandated
 
 by state or federal statute, law, regulation or rule” (Administrative Code § 21-128 [b] [emphasis added]), and EVR is an additional eligibility requirement imposed by the City, we conclude that EVR eligibility investigations for DASIS clients are prohibited by section 21-128 (b).
 

 Finally, the spirit and purpose of Local Law No. 49 also compel our conclusion. There is no dispute that Local Law No. 49 was enacted to facilitate access to necessary public benefits and services for individuals suffering from clinical/symptomatic HIV illness and AIDS in New York City. WTien the meaning of certain terms in a statute is unclear, “a court’s role is not to delve into the minds of legislators, but rather to effectuate the statute by carrying out the purpose of the statute as it is embodied in the words chosen by the Legislature”
 
 (Braschi v Stahl Assocs. Co.,
 
 74 NY2d 201, 208). Construing Local Law No. 49 as eliminating EVR investigations for DASIS clients is consistent with the explicit intent of City lawmakers to
 
 *789
 
 streamline eligibility determination procedures and requirements for this unique group of public assistance applicants, as evidenced by the words of the statute and the legislative history. To illustrate, the City Council Committee Report specifically explains that “[t]he definition of ‘access to benefits and services’ was re-worded from that provided in the original bill to stress the fact that applicants for benefits and services should be able to receive assistance from HRA in a single location, be it the field office, home, hospital, or other convenient location” (City Council Comm Report, at 3, n 3 [May 22, 1997]). The report further notes that the single location requirement contemplated “that all elements of eligibility, including those currently occurring at HRA’s Eligibility Verification Review office (EVR), take place at the same location”
 
 (id.).
 

 Thus, the conclusion is manifest. EVR investigations for DASIS clients contravene one of the intended purposes of Local Law No. 49: to ease unnecessary administrative burdens for public assistance applicants suffering from clinical/ symptomatic HIV illness or AIDS in New York City. Finally, nothing in this decision should be taken as prohibiting efforts or procedures to prevent or eliminate fraud.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the order and judgment of Supreme Court, New York County, insofar as it pertained to petitioner Hernandez, reinstated.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick, Wesley and Rosenblatt concur.
 

 Order reversed, etc.
 

 [1]
 

 . Shortly after petitioner commenced the instant proceeding, HRA eliminated the requirement that DASIS applicants travel to its Brooklyn office for an interview and replaced it with a mandated home visit.
 

 [2]
 

 . While the Appellate Division determined that this phrasing qualifies only the immediately preceding sentence rather than the passage as a whole, we find that interpretation to be strained. The preceding sentence states that “[t]he commissioner shall have the authority to provide access to additional benefits and services and ensure the provision of such additional benefits and services.” Inasmuch as there are no State or Federal
 
 requirements
 
 with regard to additional benefits and services (e.g., nutrition and transportation allowances), the Appellate Division’s reading of the statute would render this provision meaningless, in direct contravention of settled principles of statutory construction (see,
 
 e.g., Lederer v Wise Shoe Co.,
 
 276 NY 459, 465).
 

 Moreover, the legislative history states that this language “would mandate that the requirements
 
 with respect to accessing benefits and services
 
 shall not be more restrictive tha[n] those requirements mandated by State or Federal statute, law, regulation, or rule” (City Council Comm Report, at 5 [May 22, 1997] [emphasis added]).
 

 [3]
 

 . The corresponding regulations do not mandate EVR investigation either (see,
 
 e.g.,
 
 18 NYCRR 351.28, 351.2 [b], [e], [e] [1]; 351.1 [a], [c]; 351.5 [a]; 351.6, 351.6 [a]).