*430 OPINION OF THE COURT
Gabriel W. Gorenstein, J.
The defendants are charged with criminal mischief in the fourth degree (Penal Law § 145.00 [1]), making graffiti (Penal Law § 145.60 [2]) and possession of graffiti instruments (Penal Law § 145.65). The accusatory instrument states in pertinent part that defendant Torres was observed “removing posters from scaffolding at” Broadway and 49th Street in New York County and the defendant Neal was seen “standing approximately three feet from” Torres, “applying glue to said scaffolding and placing posters on said scaffolding.” Neal was “holding a bucket containing glue as well as a brush commonly used for applying glue” and “that said glue caused damage to the scaffolding.” The factual allegations also state that Leonard Base of AJ Contracting “is a custodian of said scaffolding and that defendants did not have the permission to damage the property.”
Defendants now move to dismiss the charges on the ground that the accusatory instrument is facially insufficient in that the factual allegations do not support the crimes charged.
Meaning of “Graffiti” under Penal Law §§ 145.60 and 145.65
Defendants argue that the acts charged — the use of glue to affix posters on scaffolding — do not constitute the making of “graffiti” under Penal Law § 145.60. They also argue that the glue and posters cannot constitute “graffiti instruments” under Penal Law § 145.65.
The defendants rightly point out that the usual meaning of the term “graffiti” is limited to some kind of writing. The term derives from a Greek word meaning “to write” and, as defendants point out, numerous cases use the term “graffiti” with this exclusive meaning. Indeed, some cases implicitly distinguish between “graffiti” and the affixing of posters. (See, e.g., Libertad v Welch, 53 F3d 428, 433 [1st Cir 1995].) The defendants also cite to numerous statutes of other States that use a definition of “graffiti” that is based exclusively on writing or instruments of writing. Unquestionably, the common meaning of the term “graffiti” would not include the conduct charged here.
The issue in this case, however, is not what is the common meaning of the term “graffiti.” Despite the title of the New York statutes, each contains a specific definition of “graffiti” and “graffiti instruments” that applies in this case and that *431 must be construed by the court. Penal Law § 145.60 (1) states: “the term ‘graffiti’ shall mean the etching, painting, covering, drawing upon or otherwise placing of a mark upon public or private property with intent to damage such property.” Penal Law § 145.65 defines a graffiti instrument as a “tool, instrument, article, substance, solution or other compound designed or commonly used to etch, paint, cover, draw upon or otherwise place a mark upon a piece of property.” The People argue that what has occurred here is a “covering” of public or private property with the intent to damage it and that, as such, the affixing of posters with glue comes within the statute. Thus, regardless of the usual meaning of the term “graffiti,” the court must decide whether the conduct alleged here comes within the definition enacted by the Legislature.
In construing statutes, the starting point is to examine the statutory text, the clearest indicator of legislative intent, and to determine whether it demonstrates a “plain meaning.” If the words employed by the Legislature have “ ‘a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning’.” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998], quoting Tompkins v Hunter, 149 NY 117, 123 [1896].)
 The word “cover” is defined as “to overspread with something which marks or occupies the whole surface” (Oxford English Dictionary, definition 2e [2d ed 1994]); “to spread on or over; put over the surface of’ (Random House Webster’s College Dictionary, definition 7 [1999]). It cannot be disputed that the words “covering” and “cover” include the activities alleged by the defendants here. The defendants implicitly concede this point but argue instead that the court should not examine the word “cover” in isolation but should instead consider it in the context of the other words in the statute. The defendants invoke two doctrines of statutory interpretation to argue that the word “cover” should not be construed in accordance with its normal meaning: noscitur a sociis and ejusdem generis.
The rule of noscitur a sociis, as set forth in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 239 (a), is that “words employed in a statute are construed in connection with, and their meaning is ascertained by reference to the words and phrases with which they are associated.” The defendants thus argue that the word “covering” and “cover” must be construed to be similar in meaning to “etching, painting or drawing'.” However, the rule of noscitur a sociis applies only where “the *432 meaning of a statute is ambiguous.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [a].) There is nothing ambiguous about the word “cover.” Accordingly, the court may not properly make reference to that rule. Even were this rule considered, the terms “etch, paint, draw upon” and “placing a mark” all denote different means of altering the appearance of a surface. The same alteration may be accomplished by the “covering” of a surface, for example, through the use of paper affixed with glue. Thus, even a typical graffiti vandal might be said to “mark” a lamppost or doorway through the use of a paper sticker. The common meaning of the term “cover” is ultimately consistent with the other terms in the statutory definition. There is no other, special meaning of “cover” that is somehow more consistent with these other terms. As a result, an examination of the other terms in the statute does not elucidate further the Legislature’s intention with respect to its use of the term “cover.”
Nor does the doctrine of ejusdem generis, as defined in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 239 (b), provide a basis for defining the words “covering” and “cover” by reference to other language used in the statute. Ejusdem generis is defined in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 239 (b) as a rule of statutory construction requiring “the court to limit general language of a statute by specific phrases which have preceded the general language” (emphasis added). Here, the general language of this statute— “otherwise placing a mark” — is not at issue. In other words, the People are not attempting to charge the defendants here under this catch-all phrase. Rather, the People are relying on specific words in the statutes to apply to the conduct charged: “cover” and “covering.” Thus, the doctrine of ejusdem generis does not apply.
Defendant makes a separate argument that because Penal Law § 145.65 refers to tools “commonly used to etch, paint, cover, draw upon or otherwise place a mark upon a piece of property” (emphasis added) that the “common usage” of the term “graffiti” must somehow govern the interpretation of the statute. This argument is without logic. Penal Law § 145.65 refers to the “tool[sj” or “substance[s]” and so forth that are “commonly used” to make graffiti (emphasis added). If it is in fact the case that the Legislature intended' that any “covering” of property — such as covering property with glue and paper — with the intent to damage it constitutes graffiti, then any tools or substances commonly used to cover property with *433 glue or paper would obviously be within the statute. In other words, the term “commonly used” gives meaning to what constitutes the “tool[s]” or “substance[s]” used to make the graffiti, not to the term “graffiti” itself.
In the end, “ ‘a court’s role is not to delve into the minds of legislators, but rather to effectuate the statute by carrying out the purpose of the statute as it is embodied in the words chosen by the Legislature’.” (Matter of Hernandez v Barrios-Paoli, 93 NY2d 781, 788 [1999], quoting Braschi v Stahl Assocs. Co., 74 NY2d 201, 208 [1989].) Here, the language of the pertinent statute is “‘reasonably plain’.” (Matter of Brown v Wing, 93 NY2d 517, 522 [1999], citing Griffin v Oceanic Contrs., 458 US 564, 570; Negonsott v Samuels, 507 US 99 [1993].) As a result, the court is not required to examine the legislative history behind the statute to further divine the meaning of the term “cover.” (See, e.g., Giblin v Nassau County Med. Ctr., 61 NY2d 67, 74 [1984]; Meltzer v Koenigsberg, 302 NY 523, 525 [1951].)
Legislative History
Even were the court to examine the legislative history of the graffiti statutes, that history is in fact consistent with a general purpose on the part of the Legislature to prohibit the defacement of property. The statute’s legislative declaration of intent broadly declares in pertinent part that “graffiti vandalism poses a serious problem for urban centers and especially the city of New York. The unabated proliferation of graffiti is a physical blight upon the urban landscape and costs taxpayers, merchants and homeowners millions of dollars to remove and repair.” (L 1992, ch 458, § 1.) No reference is made to writing or drawing. Similarly, the sponsors of the bill that was ultimately enacted as Penal Law §§ 145.60 and 145.65 submitted a memorandum of support which indicates that the laws were intended to reach any defacement to public or private property without limiting it to the manner in which the defacement is accomplished. The combined memorandum of support by the sponsors, Assemblyman Anthony Seminerio and Senator Serphin Maltese, states that the purpose of the laws was to impose penalties for the “defacing” of property and summarizes the provisions of the bill by stating that “[t]he bill makes it a Class B Misdemeanor for the possession of a graffiti instrument with the intent to use said instrument to deface property” and “makes it a Class A misdemeanor for the defacement of public/private property.” (Mem in Support, Bill Jacket, L 1992, ch 458.) They too cite as justification for the bills that “[g]raffiti *434 is a physical blight upon the urban landscape and costs taxpayers, merchants and landowners millions of dollars to remove and repair.” (Ibid.) Thus, the Legislature’s central concern was the defacement of property and the physical blight created by that defacement, not the method by which the defacement occurred. Their concerns apply equally to paper affixed with glue as they do to a writing created with spray paint.
As the defendants point out in great detail, a report before the Legislature at the time of the enactment of the graffiti statutes dealt exclusively with the issue of written graffiti. (See, Report of NY State Comm on Cities, Comin’ Clean [Mar. 1991].) Significantly, the statutory language proposed in that report to deal with this issue was similarly limited in scope. It provided that “[n]o person shall write, paint or draw any inscription, figure or mark of any type on any building public or private, or any other property real or personal owned by any person, firm or corporation or any public agency or instrumentality, without the express permission of operator of said property.” (Appendix, Cornin’ Clean, at 41-42.) Under the wording of the statute proposed by the Cornin’ Clean report, the affixing of posters to structures would not have violated the law. In enacting what came to be Penal Law §§ 145.60 and 145.65, however, the drafters abjured this proposed language and chose to include the word “cover.” The Legislature presumably added this word to expand the range of conduct that the statute was prohibiting. Similarly, the declaration of intent in the statutory language proposed in the report refers repeatedly to “writing graffiti.” It begins by condemning “the use of broad-tipped pens, spray cans or other marking devices used in connection with writing graffiti on the walls.” Yet, as already noted, the language regarding intent was significantly changed in the bill as finally enacted to make generic reference to the “physical blight” caused by graffiti and to the costs to “remove and repair.” This change in the declaration of intent and the inclusion of the word “cover” in the bill as finally enacted can only suggest that the Legislature was enlarging the proposal made in the 1991 report.
The defendants point out that in a single instance quoted in the report, Senator Padavan inquired of a graffiti vandal during a hearing what would happen if he “cover [ed] over” another person’s graffiti. (See, Comin’ Clean, op. cit., at 5-6.) While defendants argue that the word “cover.” in the statute refers in some way to the subject of this brief exchange, it is far more likely that the Legislature intended the normal meaning of the *435 word. No legislator seeing the word “cover” in the proposed text of these statutes would have any reason to believe that this word was limited in its meaning to the specific context of the term as it was used in a single instance by Senator Padavan in his discussion with the vandal. Moreover, if, as defendants contend, this exchange demonstrates that the term “cover” was intended to mean only the “writing” of graffiti, then the statutory language proposed in the Comin’ Clean report itself would surely have included the word “cover.” It is significant that the report does not in fact include this word in the proposed statute. As already noted, it was the Legislature that chose to add the word “cover” when it later drew up the statute as enacted. This word should thus be construed to have some meaning other than the words “write, paint or draw.”
Finally, the court does not accept defendants’ argument that the existence of a separate statute outlawing the unlawful posting of advertisements, Penal Law § 145.30, shows that the Legislature did not intend to bar the conduct at issue in this case. The instant statutes bar conduct relating to the “covering” of public and private property with the “intent to damage such property.” (Penal Law § 145.60 [2] [emphasis added].) The Legislature could properly criminalize conduct that would otherwise be a violation of section 145.30 in those situations where the People were prepared to prove such intent.
Damage to Property
The court rejects the defendants’ remaining argument that the accusatory instrument does not allege facts which establish the elements of “damage” or “the intent to damage” property, elements of each of the three crimes charged. While the defendants assert that the glue was “water soluble,” the intent to damage and the question of actual damage is an issue for the trier of fact. At this stage of the proceedings, the accusatory instrument provides “reasonable cause” (CPL 100.40 [1] [b]) to believe that the scaffolding at issue was “damaged” by virtue of the application of glue, a foreign substance, and paper. The Practice Commentary to the statute states that “ ‘ “Damage” implies an injury or harm to property that lowers its value or involves loss of efficiency’ ” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 145.00, at 103). The application of the glue and paper to the scaffolding adds something to the surface which is not part of the original material thereby changing the surface and thus has the potential not only to lower its value but also to result in some *436 loss of use. Whether or not such damage was caused or was intended to be caused by the application of the glue and the paper is an issue of fact for the People to prove at trial. (See, People v Vinolas, 174 Misc 2d 740 [Crim Ct, NY County 1997].)
The motion to dismiss the accusatory instrument on the ground that the factual allegations are insufficient is denied.