# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 11
CIT Bank N.A.,
     Respondent,
    v.
Pamela Schiffman, et al.,
     Appellants,
et al.,
     Defendants.

Samuel Katz, for appellants.
Sean Marotta, for respondent.

DiFIORE, Chief Judge:

In New York, prior to commencing a residential foreclosure action, a lender must comply with certain requirements set forth in the Real Property Actions and Proceedings Law (RPAPL). As relevant here, these include, under section 1304, providing certain notices to the borrower 90 days before commencing a foreclosure action and, under section 1306, completing an electronic filing providing certain borrower information to the state

- 1 -

Department of Financial Services (DFS).  In this appeal involving a foreclosure action commenced in federal court, the United States Court of Appeals for the Second Circuit has posed two questions to this Court implicating what a lender must do to comply with these statutes.  First, the Second Circuit asks how a borrower can rebut a lender's proof of compliance with RPAPL 1304 when that proof is in the form of a standard office mailing procedure.  We respond that where a presumption of mailing and receipt arises from such evidence it may be rebutted by proof of a material deviation from the ordinary practice that calls into doubt whether the notice was properly mailed.  Second, with respect to the RPAPL 1306 filing, we are asked if the statute requires the inclusion of information about each individual liable on the loan.  We conclude that it does not and that information about only one borrower is sufficient.

As stated by the Second Circuit, in 2008 defendant Pamela Schiffman executed a $326,000 note secured by a mortgage on property she owned with her husband, defendant Jerry Schiffman.  The couple jointly executed a Consolidation, Extension and Modification Agreement combining prior obligations on the property into a single agreement, and later entered into a loan modification agreement.  The mortgage was assigned to OneWest Bank, F.S.B., which—after defendants' payment default in December 2014—later became known as plaintiff CIT Bank N.A. (CIT).  Following the default, CIT commenced this foreclosure action against the Schiffmans in October 2016 in the United States District Court for the Eastern District of New York.  Defendants answered, asserting (among other defenses) that CIT failed to comply with RPAPL 1304 and 1306.

CIT moved for summary judgment against defendants, arguing it had established its *prima facie* entitlement to a judgment of foreclosure and, as relevant here, that it had satisfied the requirements of RPAPL 1304 and 1306 in November 2015, almost a year before commencing suit, by mailing the notices and submitting the electronic filing within three days of that mailing. To demonstrate compliance with RPAPL 1304, CIT submitted the affidavit of employee Rachel Hook in which she attested to her personal knowledge of CIT's routine office practice relating to the generation, addressing, and mailing of 90-day notices, which she described in the affidavit. Copies of the notices and envelopes purportedly mailed to Pamela and Jerry Schiffman were attached to the motion papers. As relevant to the first certified question, Hook's affidavit stated that, as part of CIT's routine practice, envelopes for the 90-day notices are "created upon default." CIT also submitted a copy of its completed RPAPL 1306 electronic filing statement, which listed Pamela Schiffman as the borrower and stated that the filing was completed on the same day as the mailing of the 90-day notice. Defendants opposed summary judgment, denying receipt of the section 1304 notices, asserting the Hook affidavit was insufficient to create a presumption of receipt for various reasons, and contending that CIT failed to satisfy section 1306 by listing only Pamela, and not also Jerry, on the filing.

The motion was referred to a magistrate judge, who recommended that the court grant CIT's motion for summary judgment. Adopting that recommendation, District Court granted summary judgment to CIT, concluding that the bank satisfied both RPAPL 1304 and 1306. Defendants appealed, arguing, among other things, that the District Court erred in concluding that CIT proved compliance with RPAPL 1304. Specifically, defendants

contended that it was evident from the fact that the notices were dated almost a year after default that the bank had deviated from its routine office practice of generating the envelopes for the 90-day notices "upon default." Defendants also reiterated their argument that CIT failed to comply with RPAPL 1306 because the requisite filing listed only one of their names.

On appeal, the Second Circuit did not resolve defendants' argument that, even if a presumption arose, the "nearly one-year gap" between the date of the notice and defendants' initial payment default rebutted the presumption, creating a triable question of fact.[*] Determining that it needed guidance from this Court as to the type of showing necessary to rebut the presumption in this context, the Second Circuit certified the first question, which asks:

> "Where a foreclosure plaintiff seeks to establish compliance with RPAPL § 1304 through proof of a standard office mailing procedure, and the defendant both denies receipt and seeks to rebut the presumption of receipt by showing that the mailing procedure was not followed, what showing must the defendant make to render inadequate the plaintiff's proof of compliance with § 1304?" (*CIT Bank N.A. v Schiffman*, 948 F 3d 529, 538 [2d Cir 2020]).

With respect to CIT's compliance with the RPAPL 1306 electronic filing requirement, the Second Circuit concluded that whether the statute requires a lender to list all borrowers on the filing constitutes an unresolved question of New York law, certifying the second question, which asks: "Where there are multiple borrowers on a single loan,

---

[*] The Second Circuit has not requested guidance concerning whether CIT's submissions created a presumption—a matter the Second Circuit addressed and resolved in CIT's favor, rejecting defendants' arguments to the contrary (*CIT Bank N.A.*, 948 F 3d at 534).

does RPAPL § 1306 require that a lender's filing include information about all borrowers, or does § 1306 require only that a lender's filing include information about one borrower?" (*id.*).

We accepted the questions for review pursuant to section 500.27 of this Court's rules (*CIT Bank N.A. v Schiffman*, 34 NY3d 1137 [2020]).

### Certified Question No. 1

We begin with the first question concerning the showing necessary to rebut the presumption created by proof of a standard office mailing procedure in the section 1304 context. RPAPL 1304(1) provides that "with regard to a home loan, at least ninety days before a lender, an assignee or a mortgage loan servicer commences legal action against the borrower, or borrowers . . . including mortgage foreclosure, such lender, assignee or mortgage loan servicer shall give notice to the borrower." The notice must be sent "by registered or certified mail and also by first-class mail" and contain a list of at least five local housing counseling agencies, among other requirements (RPAPL 1304[2]). "Notice is considered given as of the date it is mailed" (*id.*).

The legislature enacted RPAPL 1304 in 2008 in response to the mortgage crisis, initially making it applicable only to lenders of certain "high-cost," "subprime" and "non-traditional" home loans (L 2008, ch 472, § 2). The scope of the statute was expanded the following year to cover all home loans (L 2009, ch 507, § 1-a; *see* RPAPL 1304[1], [6][a][1]). This had the effect of increasing the number of borrowers who would benefit from the information provided in the notice and the 90-day period during which the parties could attempt to work out the default "without imminent threat of a foreclosure action," in

an effort to further the ultimate goal of reducing the number of foreclosures (Governor's Program Bill, 2009 Mem, Bill Jacket, L 2009, ch 507 at 10).

RPAPL 1304 does not indicate what proof a lender must submit in a foreclosure action to demonstrate compliance with the notice requirement. However, in analogous circumstances, this Court has long recognized a party can establish that a notice or other document was sent through evidence of actual mailing (*e.g.*, an affidavit of mailing or service) (*see Engel v Lichterman*, 62 NY2d 943, 944 [1984]) or—as relevant here—by proof of a sender's routine business practice with respect to the creation, addressing, and mailing of documents of that nature. Evidence of "an established and regularly followed office procedure" (*Matter of Gonzalez (Ross)*, 47 NY2d 922, 923 [1979]) may give rise to a rebuttable "presumption that such a notification was mailed to and received by [the intended recipient]" (*Preferred Mut. Ins. Co. v Donnelly*, 22 NY3d 1169, 1170 [2014]; *see also Nassau Ins. Co. v Murray*, 46 NY2d 828, 829 [1978]). "In order for the presumption to arise, [the] office practice must be geared so as to ensure the likelihood that [the] notice . . . is always properly addressed and mailed" (*Nassau Ins. Co.*, 46 NY2d at 830). Such proof need not be supplied by the employee charged with mailing the document (*see Bossuk v Steinberg*, 58 NY2d 916, 919 [1983]) but can be offered in the form of an affidavit of an employee with "personal knowledge of the practices utilized by the [company] at the time of the alleged mailing" (*Preferred Mut. Ins. Co.*, 22 NY3d at 1170; *see also Nassau Ins. Co.*, 46 NY2d 828). For example, in *Preferred Mut. Ins. Co.*, we deemed an affidavit describing the procedures used by an insurance company "to ensure the accuracy of addresses, as well as office procedure relating to the delivery of mail to the post office"

sufficient to support the presumption, where the affidavit explained, among other things, how the notices and envelopes were generated, posted and sealed, as well as how the mail was transmitted to the postal service (22 NY3d at 1170, *affg* 111 AD3d 1242, 1244 [4th Dept 2013]).

The particular issue before us here is what showing a borrower must make to *rebut* the presumption created through proof of a standard office mailing procedure in the context of RPAPL 1304 notices. In this Court, defendants essentially argue that a lender's showing of compliance with section 1304 through an affidavit of a routine office mailing procedure can be rebutted by the borrower's denial of receipt, accompanied by a showing that any aspect of the routine office procedure was not followed. CIT does not disagree that a denial of receipt and a showing of noncompliance can raise a fact issue but contends that this is true only if the deviation from procedure is material and related to the mailing process in a manner that would affect whether the document was mailed to the appropriate party.

It is well-settled that "[d]enial of receipt . . . standing alone, is insufficient . . .. In addition to a claim of no receipt, there must be a showing that [the] routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed" (*Nassau Ins. Co.*, 46 NY2d at 829-830). While we set forth these general principles in *Nassau Ins. Co.*, we did not elaborate upon the nature or extent of the departure from stated office routine necessary to rebut the presumption. Asked by the Second Circuit for further guidance on that issue, we clarify that to rebut the presumption, there must be proof of a material deviation from an aspect of the office procedure that would call into doubt whether the notice was properly mailed, impacting the likelihood of

delivery to the intended recipient. Put another way, the crux of the inquiry is whether the evidence of a defect casts doubt on the reliability of a key aspect of the process such that the inference that the notice was properly prepared and mailed is significantly undermined. Minor deviations of little consequence are insufficient.

What is necessary to rebut the presumption that a RPAPL 1304 notice was mailed will depend, in part, on the nature of the practices detailed in the affidavit. Moreover, contextual considerations may also factor into the analysis. For example, here, CIT points out that residential notes and mortgages are negotiable instruments that often change hands at various points during their duration, which may impact the timing of the creation and mailing of RPAPL 1304 notices—a contextual factor a court could consider in assessing whether a purported deviation from routine procedure was material. We reject defendants' argument that a single deviation from any aspect of the routine office procedure necessarily rebuts the presumption of mailing. Such a standard would undermine the purpose of the presumption because, in practice, it would require entities to retain actual proof of mailing for every document that could be potentially relevant in a future lawsuit. As we recognized almost a century ago, such an approach would be financially and logistically impractical given the reality that commercial entities create and process significant volumes of mail and may experience frequent employee turnover—circumstances that apply not only to banks, but many other businesses and government agencies (*see generally Johnson v Lutz*, 253 NY 124, 126-127 [1930] [addressing adoption of the business records rule]). Instead, New York courts have applied a workable rule that balances the practical considerations underpinning the presumption against the need to ensure the reliability of a routine office

practice with respect to the creation and mailing of notices, which we have further clarified today in the context of notices mailed pursuant to section 1304.

The Second Circuit has not asked us to address how the standard should be applied in this case and we therefore express no view on that question (*see e.g. Engel v CBS, Inc.*, 93 NY2d 195, 207 [1999]).

## Certified Question No. 2

The second certified question asks whether RPAPL 1306 requires that a lender's filing include information about all borrowers on a multi-borrower loan. RPAPL 1306 provides that as a "condition precedent" to commencing a foreclosure action, "[e]ach lender, assignee or mortgage loan servicer" file with the superintendent of financial services "within three business days of the mailing of the [section 1304 notice] . . . the information required by subdivision two" (RPAPL 1306[1]). Subdivision two directs, in relevant part, that "[e]ach filing . . . shall be on such form as the superintendent shall prescribe and shall include at a minimum, the name, address, last known telephone number of the borrower, and the amount claimed as due and owing on the mortgage . . .." (RPAPL 1306[2]). In this case, defendants do not dispute that CIT submitted the electronic filing—nor do they dispute that it was made within three days of the purported date of the mailing of the 90-day notices. Instead, defendants contend that the copy of the filing statement supplied by CIT was insufficient to establish compliance because it listed only Pamela Schiffman, and not Jerry Schiffman, as a borrower—arguing that the statute requires a lender to include "up to two, not only one" borrower on a multi-borrower loan. CIT asserts that only one borrower must be listed on an RPAPL 1306 filing in light of the plain

language of the statute, which refers to "the borrower" in singular form, and the statute's primary purpose to provide data on defaulting loans to a state agency, which is satisfied by listing one borrower on the filing. We agree with CIT.

Whether the statute requires the lender to list the names of each individual or entity liable on a loan is a matter of statutory interpretation. "[O]ur primary consideration is to ascertain and give effect to the intention of the [l]egislature" (*Samiento v World Yacht Inc.*, 10 NY3d 70, 77-78 [2008], quoting *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). Because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]), with due consideration given to the statutory purpose and history, including the objectives the legislature sought to achieve through its enactment (*see Abood v Hospital Ambulance Serv.*, 30 NY2d 295, 298 [1972]; *Matter of Hernandez v Barrios-Paoli*, 93 NY2d 781, 786, 788-789 [1999]; *Riley v County of Broome*, 95 NY2d 455, 463-464 [2000]).

Although the statute does not specify whether information must be supplied concerning each party when there are multiple individuals or entities on a single loan, a plain reading indicates that RPAPL 1306 is satisfied as long as one borrower is listed. The statute states that the filing must contain information about "the borrower," referring to the party in singular form—unlike RPAPL 1304, which references the "borrower, or borrowers." To be sure, words in the singular may generally be interpreted to encompass the plural, if doing so is consistent with the context and legislative intent (*see* General Construction Law § 35; *Matter of Toys "R" Us v Silva*, 89 NY2d 411, 421 n 2 [1996]).

But it is significant that, despite using the singular and plural form in section 1304, the legislature chose to reference only the singular "borrower" in RPAPL 1306, a closely related statute.

Moreover, the conclusion that information relating to one borrower suffices is consistent with the primary purpose of the filing, which is expressed in the plain language of the statute. RPAPL 1306(4) provides that the data collected via the filing "shall be used by the superintendent [of financial services] *exclusively* for the purposes of monitoring on a *statewide basis* the extent of foreclosure filings within this state" with the ultimate purpose to "perform an analysis of *loan types*" at risk of foreclosure and to "direct[] as appropriate available public and private foreclosure prevention and counseling services to borrowers at risk of foreclosure" (RPAPL 1306[4] [emphasis added]). This provision shows that the principal objective of the filings is to provide statistical data permitting DFS to accurately track and analyze loans at risk of foreclosure and properly allocate foreclosure counseling resources statewide in order to combat the mortgage crisis—an aim also reflected in the legislative history (Governor's Program Bill, 2009 Mem, Bill Jacket, L 2009, ch 507 at 9, 11). This objective is fulfilled by a filing that references at least one borrower. Indeed, it appears that DFS—the agency charged with developing the filing form and database and otherwise implementing the statute—views RPAPL 1306 as requiring the listing of only one borrower (*see* Pre-foreclosure Information Form FAQs, NYS Department of Financial Services, available at https://www.dfs.ny.gov/apps_and_licensing/mortgage_companies/pre-foreclosure_filing_guide_faqs [last accessed Mar. 19, 2021] [RPAPL 1306 "does not

specifically anticipate multiple borrowers" and "do(es) not believe RPAPL § 1306 should be interpreted as requiring the reporting of more than two Borrowers"]).

To be sure, the statutory text permits the agency to share information from the filing with certain housing counseling agencies that coordinate help for distressed borrowers, and DFS may use the information "to facilitate a review of whether the borrower might benefit from counseling or other foreclosure prevention services" (RPAPL 1306[2], [4]). But such ancillary uses of the data do not compel the conclusion that the statute is violated if each liable individual is not listed on the filing. In most instances, an electronic filing containing one borrower's information would not impede these downstream uses of the data. Indeed, in many cases the inclusion of additional information about a second borrower would be redundant—as reflected here, where the borrowers are married, reside at the subject property together, and their interests are aligned (as is evident from their joint representation by the same counsel). To read the statute as defendants urge would give an overly specific interpretation to "borrower," unsupported by the language of the statute or the primary legislative objective—to provide DFS with statewide data on properties at risk of foreclosure through a filing containing information about the loan and the "borrower." Thus, a filing that includes information about only one borrower is sufficient under the statute.

Accordingly, the certified questions should be answered in accordance with this opinion.

FAHEY, J. (concurring):

The Second Circuit has certified to us a question regarding the showing required to rebut the presumption of receipt created by proof of a standard office mailing procedure (*see* 948 F3d 529, 538 [2d Cir 2020]).  As the majority notes (majority op at 4 n), the

- 1 -

Second Circuit has not asked this Court about the nature or quantum of proof sufficient to create the presumption in the first place. Nevertheless, the Second Circuit has invited us to "address any other issues of New York law that would assist [the Second Circuit] in determining whether CIT demonstrated compliance" with the RPAPL statutes at issue in this case (948 F3d at 538). Inasmuch as the proof necessary to rebut a presumption can be fully considered only in conjunction with the threshold issue of what proof gives rise to the presumption in the first instance, and because the presumption of mailing and receipt is an issue that arises in many areas of the law, I write separately to briefly address New York law on that threshold issue.

As the majority states, where a party seeks to establish receipt of a document through proof of a standard office mailing procedure rather than proof of actual mailing, the proponent must provide evidence of its routine office practice with respect to the "creation, addressing, and mailing of documents of that nature" (majority op at 6). If the proponent demonstrates "an established and regularly followed office procedure designed to insure that [documents] are properly addressed and mailed, a rebuttable presumption arises that the [documents] are received" (*Matter of Gonzalez [Ross]*, 47 NY2d 922, 923 [1979], citing *Nassau Ins. Co. v Murray*, 46 NY2d 828, 829-830 [1978]). We allow proof of a standard office procedure to substitute for proof of actual mailing for practical reasons, based on the assumption that "a person who regularly follows a strict routine in relation to a particular repetitive practice is likely to have followed that same strict routine at a specific date or time relevant to the litigation" (*Galetta v Galetta*, 21 NY3d 186, 198 [2013]; *see Gardam & Son v Batterson*, 198 NY 175, 178-180 [1910]). Upon adequate proof of

mailing, the presumption of receipt, in turn, is "founded on the probability that the officers of the government will do their duty; and the usual course of business" (*News Syndicate Co. v Gatti Paper Stock Corp.*, 256 NY 211, 214 [1931] [internal quotation marks omitted]).

For the presumption to arise, the standard office procedure "must be geared so as to ensure the likelihood that [the document] is always properly addressed and mailed" (*Nassau Ins. Co.*, 46 NY2d at 830). The proof of that standard procedure generally should include a description of "the practices utilized by the [mailing party] at the time of the alleged mailing to ensure the accuracy of addresses, as well as office procedures relating to the delivery of mail to the post office" (*Preferred Mut. Ins. Co. v Donnelly*, 22 NY3d 1169, 1170 [2014]).

In *Gardam & Son*, for example, this Court held that the proof of a standard office mailing procedure was deficient because, although the defendant testified that he always placed outgoing letters in a tray on his desk to be mailed, there was "no sufficient proof of a course of office practice, or of business, from which a presumption might be legally indulged, that the letters had been carried to the post office and that they, therefore, had been received in due course of the mails" (198 NY at 178). We held that

> "[h]owever strong the convictions and the statements of the defendant as to the usual mailing of the letters placed on his desk, there was the gap in the proof, created by the failure to show that regular practice, or custom, of carrying them to the post, by some one charged with that duty, from which a presumption would naturally arise of these letters having been posted" (*id.* at 180; *see also Progressive Cas. Ins. Co. v Infinite Ortho Prods., Inc.*, 127 AD3d 1050, 1051-1052 [2d Dept 2015]; *Rhulen Agency v Gramercy Brokerage*, 106 AD2d 725,

726 [3d Dept 1984]).

By contrast, in *Preferred Mut. Ins. Co.*, the proof was sufficient to raise a presumption of mailing and receipt where an affidavit described how the notices in question were generated, addressed, and placed in envelopes; how those envelopes were transported to the mail room, posted and sealed; and then how the mail was regularly delivered to the nearby post office (22 NY3d at 1170, *affg* 111 AD3d 1242, 1244 [4th Dept 2013]; *see also Badio v Liberty Mut. Fire Ins. Co.*, 12 AD3d 229, 230 [1st Dept 2004]; *Jonathan Woodner Co. v Higgins*, 179 AD2d 444, 445 [1st Dept 1992], *lv denied* 80 NY2d 756 [1992]).

Once the presumption arises, I agree with the majority that to rebut the presumption, the alleged recipient must deny receipt and point to a deviation from an aspect of the stated office procedure that would call into doubt whether the notice was properly prepared, addressed, or mailed (*see* majority op at 7-9).[*] I further agree that minor, insignificant deviations from the stated procedure will not be sufficient to rebut the presumption, although what constitutes a minor deviation will depend upon the stated office practice described by the proponent (*see id.*). Of course, it would be in the proponent's interest in such situations to explain the reason for any deviation from the standard office practice in order to diminish doubt as to the reliability of the mailing and minimize the likelihood that a court will consider the deviation sufficient to rebut the presumption.

I am in full agreement with the majority's response to the Second Circuit's certified

---

[*] Alternatively, a recipient may rebut the presumption by denying receipt and showing that the routine office practice "was so careless that it would be unreasonable to assume that the notice was mailed" (*Nassau Ins. Co.*, 46 NY2d at 830). Defendants did not make such a claim here.

question regarding RPAPL 1306.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in accordance with the opinion herein. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Garcia and Wilson concur. Judge Fahey concurs in an opinion, in which Judges Stein and Wilson concur.

Decided March 30, 2021